UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, CANTON

```
------------------------------------------------------x
In re:                                                 :   Case No. 10-61033
                                                       :
THE HERALD PRINTING COMPANY                            :   Chapter 11
                                                       :
   an Ohio corporation,                                :   Judge Russ Kendig
                                                       :
              Debtor and                               :
              Debtor-in-Possession.                    :
                                                       :
(Employer Tax I.D. No. 34-1050454)                     :
------------------------------------------------------x
```

**CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF
THE MOTIONS OF DEBTOR FOR ORDERS AUTHORIZING
IT TO PAY CERTAIN PREPETITION CLAIMS**

Now comes the above captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel, and hereby submits this Consolidated Memorandum of Law in support of the following motions (collectively, the "Motions") filed contemporaneously herewith:

- Motion Of Debtor For Order (a) Granting Authority To (i) Pay Prepetition Employee Wages, Salaries, And Related Items, (ii) Reimburse Prepetition Employee Business Expenses, (iii) Make Certain Payments For Which Payroll Deductions Were Made, (iv) Make Prepetition Contributions And Pay Prepetition Benefits Under Employee Benefit Plans, And (v) Pay All Taxes, Costs, And Expenses Incident Thereto Pursuant To Section 105 Of The Bankruptcy Code And (b) Authorizing And Directing Financial Institutions To Honor And Process Checks And Transfers Related To Such Relief;

- Motion of Debtor for an Order (a) Granting Authority to Pay Prepetition Trust Fund Taxes and (b) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief.

## I. Background

As set forth in detail in the Motions, the Debtor seeks the entry of orders authorizing it to pay certain prepetition claims. Although the Debtor recognizes that relief of the sort requested in the Motions should be granted only in limited circumstances, the Debtor's situation manifestly justifies the payment of these prepetition obligations.

The relief requested in the Motions is critical to the Debtor's survival in the immediate postpetition period and to its ability to reorganize successfully. The payment of prepetition employee claims, including wages, benefits, and workers' compensation premiums, will preserve employee morale and support, which is essential to the ongoing operation of the Debtor's business. Furthermore, payment of these prepetition employee claims will help ensure that the Debtor's business will benefit from the continued hard work and dedication of its employees. If the Debtor is unable to pay these prepetition employee claims, it faces the very real prospect of losing its dedicated employees at a time when support from its workforce is critical to its survival.

With respect to prepetition trust fund taxes, such taxes are not assets of the Debtor's estate. Rather, as funds held in trust, they belong either to the payors or the intended payees – the relevant taxing authorities. Litigation over these funds would be costly, distracting and pointless. In addition, many taxing authorities impose personal liability on the officers and directors of collecting entities for trust fund taxes collected by those entities that are not paid to such taxing authorities. Thus, to the extent that any prepetition trust fund taxes remain unpaid, the Debtor's officers and directors may be subject to lawsuits or even criminal prosecution on account of such nonpayment during the pendency of this chapter 11 case. Such lawsuits or proceedings obviously would constitute a significant distraction for such officers and directors at

a time when they should be focused on the Debtor's efforts to stabilize its postpetition business operations and to develop and implement a successful reorganization strategy.

In short, the Debtor's relationship with employees is critical to the success of the Debtor's reorganization efforts. The Debtor's ability to maintain these relationships, as well as to remain in compliance with its trust fund tax obligations – thus promoting a "business as usual" atmosphere from the very outset of this chapter 11 case – will be greatly enhanced by paying the prepetition claims described in the Motions. In fact, at this critical juncture, paying these prepetition claims may offer the only means to avoid a substantial, and perhaps irreparable, disruption in the operation of the Debtor's business. It is the Debtor's business judgment, therefore, that its very survival hinges upon its ability to make the payments descried in the Motions. In critical situations of this type, applicable law permits the Debtor to make such payments. Accordingly, the Court should grant the Motions in their entirety. The request to honor or pay the claims described in the Motions, however, is wholly dependent on the Debtor obtaining postpetition financing or access to cash collateral or other funds necessary to operate its business.

**II.** **Discussion**

    **A.** **Courts Widely Recognize a Debtor's Authority to Make Postpetition Payments of Critical Prepetition Claims Under the "Necessity of Payment" Doctrine**

It is well established that a bankruptcy court has the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the going concern value of a debtor's business, thereby facilitating reorganization. See, e.g., Miltenberger v. Logansport, Crawfordsville and Southwestern Ry. Co., 106 U.S. 286, 311 (1882); In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Penn Central Transp. Co., 467 F.2d 100, 102 (3d Cir. 1972); Pension Benefit Guaranty Corp. v. Sharon Steel Corp. (In re

3

8480
10-61033-rk    Doc 9    FILED 03/17/10    ENTERED 03/17/10 12:05:41    Page 3 of 10

Sharon Steel Corp.), 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993); In re Just For Feet, Inc., 242 B.R. 821, 826 (D. Del 1999). Under this "doctrine of necessity,"[1] the immediate payment of prepetition claims may be authorized where the payments are essential to the debtor's continued operations. See, In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); In re SIS Corp., 108 B.R. 608, 609-10 (Bankr. N.D. Ohio 1989)(recognizing that payments on account of prepetition claims may be authorized by a court "premised upon overriding practical and policy reasons").

In addition, section 549(a) of the Bankruptcy Code, which governs postpetition transfers, provides that "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case . . . that is not authorized . . . by the court."[2] Thus, by necessary implication, a bankruptcy court may authorize appropriate postpetition payments to satisfy prepetition obligations. See, Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.), 37 B.R. 334, 336 n.3 (W.D. Mo. 1984) ("proposed transfers [to pay prepetition claims may] be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack").

There is ample precedent for the postpetition satisfaction of the specific types of prepetition claims described in the Motions. For example, as indicated by the unreported orders cited herein, bankruptcy courts in numerous chapter 11 cases in this District and elsewhere have

---

[1] The "doctrine of necessity" is sometimes referred to as the "necessity of payment" doctrine or "necessity of payment" rule, and falls within a bankruptcy court's equitable powers under section 105 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (authorized payment of all prepetition wage and other employment related claims of active employees); Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. §105(a).

[2] Section 549(a) provides as follows:

> Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate —
> (1) that occurs after the commencement of the case; and
> (2) (A) that is authorized only under section 303(f) or 542(c) of [the Bankruptcy Code]; or
> (B) that is not authorized under [the Bankruptcy Code] or by the court.

granted debtors relief substantially similar to that sought by the Motions.[3]  See also, In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991)("This Court often permits the payment of pre-petition wages so that the debtor-in-possession may maintain an effective work force . . .."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991)(approving payments of prepetition claims where "the payment is necessary to avert a serious threat to the Chapter 11 process"); In re Structurlite Plastics Corp., 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988)(immediate payment of a prepetition claim may be authorized where it is "vital to the reorganization of a Chapter 11 debtor").

Similarly, in the first LTV Corporation reorganization, the bankruptcy court authorized the payment of certain prepetition wages, salaries and employee benefits and reimbursement of expenses, as well as certain workers' compensation obligations, aggregating in excess of $250 million.  See, In re Chateaugay Corp., 80 B.R. 279, 281 (S.D.N.Y. 1987).  On appeal, one creditor challenged the order on the ground that the debtor should have been required to pay all similarly situated prepetition claimants.  The district court, however, affirmed the bankruptcy

---

[3] See, e.g., Republic Technologies International, LLC, No. 01-51117 (Bankr. N.D. Ohio April 2, 2001); In re LTV Steel Company, Inc., No. 00-43866 (Bankr. N.D. Ohio Dec. 29, 2000 and other dates); In re Pittsburgh – Canfield Corp., No. 00-43394 (Bankr. N.D. Ohio Nov. 16, 2000); In re DeVlieg-Bullard, Inc., No. 99-52111 (Bankr. N.D. Ohio July 15, 1999 and other dates); In re Fretter, Inc., Nos. 96-15177 through 96-15184 (Bankr. N.D. Ohio Oct. 2, 1996); In re CSC Indus., Inc. and Copperweld Steel Co., Nos. 93-41898 and 93-41899 (Bankr. N.D. Ohio Nov. 22, 1993); In re Phar-Mor, Inc., Nos. 92-41599 through 92-41614 (Bankr. N.D. Ohio Sept. 4, 1992); In re The Elder-Beerman Stores Corp., No. 95-33643 (Bankr. S.D. Ohio Oct. 17, 1995) ; In re Brendamour's, Inc., No. 94-12221 (Bankr. S.D. Ohio June 17, 1994); In re Rax Restaurants, Inc., No. 2-92-08584 (Bankr. S.D. Ohio Nov. 24, 1992); In re Eagle-Picher Indus., Inc., No. 1-91-00100 (Bankr. S.D. Ohio Jan. 7, 1991) ; In re Federated Dep't Stores, Inc., Nos. 1-90-00130 through 1-90-00196 (Bankr. S.D. Ohio Jan.15, 1990); In re Cardinal Indus., Inc., Nos. 2-89-02778 and 2-89-02779 (Bankr. S.D. Ohio May 18, 1989; June 29, 1989; see also In re Loewen Group Int'l, Inc., No. 99-1244 (D. Del. June 1, 1999); In re Strawberries, Inc., No. 97-309 (RRM) (D. Del. Feb. 17, 1997); In re Montgomery Ward Holding Corp., No. 97-1409 (Bankr. D. Del. July 8, 1997); In re Silas Creek Retail, Inc., Nos. 97-1239 and 97-1240 (Bankr. D. Del. June 12, 1997); In re MobileMedia Communications, Inc., No. 97-174 (Bankr. D. Del. Jan. 30, 1997); In re Fruehauf Trailer Corp., No. 96-1563-(Bankr. D. Del. Oct. 8, 1996); In re Edison Bros. Stores, Inc., No. 95-1354 (Bankr. D. Del. Nov. 3, 1995); In re Dow Corning Corp., No. 95-20512 (Bankr. E.D. Mich. May 17, 1995); In re Magic Restaurants, Inc., No. 95-376 (Bankr. D. Del. April 6, 1994); In re Abrasive Indus., Inc., No. 94-135 (Bankr. D. Del. Feb. 22, 1994); In re Herman's Sporting Goods, Inc., No. 93-31529 (Bankr. D.N.J. Mar. 15, 1993); In re Trans World Airlines, Inc., No. 92-115 (Bankr. D. Del. Jan. 31, 1992).  Because of the voluminous nature of the unreported orders cited herein, they are not attached to this Motion.  Copies of these Orders are available upon request from the Debtors' counsel.

court's order authorizing the debtor to make selective prepetition payments, finding that such payments did not violate the claim priority provisions of section 507 of the Bankruptcy Code:

> A rigid application of the priorities of § 507 would be inconsistent with the fundamental purpose of reorganization and one of the Act's grants of equity powers to bankruptcy courts, which is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.
>
> * * *
>
> In this case a restrictive interpretation of § 507 or of the powers accorded the bankruptcy court judge would similarly defeat the very end of Chapter 11 petitions.

Id. at 287. The district court thus affirmed the bankruptcy court's holding that a court may authorize the selective payment of certain prepetition claims where it would help to preserve and maximize the value of the debtor's estate. Id., see also, In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989).

In another chapter 11 case, the bankruptcy court applied the same rationale in authorizing the debtor to pay certain prepetition employee claims for wages, health, and life insurance and workers' compensation premiums. See, In re Gulf Air, Inc., 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989). The Gulf Air court found that such payments were in the best interests of creditors, the debtor, and the debtor's employees and were essential to a successful reorganization. Id., see also, In re UNR Indus., Inc., 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992)("The Necessity Doctrine may . . . be used . . . to justify post-petition payment of a wide variety of other types of pre-petition claims, as long as the payment of those claims will help 'to stabilize [the] debtor's business relationships without significantly hurting any party.' . . . [The key is] whether payment of the claim will be in the best interests of the estate and/or the other creditors.") (citation omitted), rev'd and remanded on other grounds, 173 B.R. 149 (N.D. Ill. 1994).

**B.  The Debtor Is Justified in Paying the Prepetition Claims Described in the Motions Because Payment Is Essential to the Debtor's Ongoing Business and to the <u>Success of Its Reorganization Efforts</u>**

Under the "necessity of payment" doctrine articulated in the foregoing cases, the Debtor's selective payment of certain prepetition claims to or on behalf of employees andprepetition trust fund taxing authorities as specified in the Motions is manifestly warranted. First, it cannot be overemphasized that the continued high quality service of the Debtor's employees is essential. Employee support for the Debtor's reorganization efforts is critical to the success of those efforts given the innumerable tasks performed by employees in all aspects of the Debtor's business. Moreover, because some of the Debtor's employees maintain direct, ongoing contact with customers and suppliers, the employees' level of confidence in and support for the Debtor's reorganization efforts is likely to have a direct impact on the Debtor's operating results. Finally, to remain in a position to enable many key employees to perform their jobs effectively, the Debtor must continue its corporate policy of permitting certain employees to incur business-related expenses and thereafter seek reimbursement by submitting appropriate invoices or vouchers evidencing such out-of-pocket disbursements.[4]

Moreover, payment of these prepetition claims would not drain the Debtor's estate of cash that would otherwise be available to the Debtor's general creditors. For example, many of the Debtor's employee claims ultimately would be paid as priority claims under the Bankruptcy Code. Pursuant to section 507(a)(4) of the Bankruptcy Code, each employee may be granted a priority claim against the Debtors of up to $10,000 for wages, salaries, commissions, and similar items earned in the 180 days prior to the date that the Debtor filed its chapter 11 petition (the

---

[4] Additionally, without the relief requested in the Motions, many of the employees would suffer undue hardship and serious financial difficulties, as employees rely on the timely payment of their wages, benefits, and other compensation to enable them to meet their own personal financial obligations.

7

8480
10-61033-rk    Doc 9    FILED 03/17/10    ENTERED 03/17/10 12:05:41    Page 7 of 10

"Petition Date").[5] Likewise, under section 507(a)(5) of the Bankruptcy Code, employees may ultimately be granted a priority claim of up to $10,000 for employee benefit plan contributions arising during the 180 days prior to the Petition Date.[6]

In certain limited instances, aggregate prepetition claims due and owing by a debtor to a particular employee may exceed the sum of $10,000 otherwise allowable as a priority claim under sections 507(a)(4) and (a)(5). The Debtor does not believe that it owes any employee, with the specific exception of the Debtor's president David Stump, over $10,000 in prepetition compensation, including vacation pay and sick pay. See Exhibit A attached to the Motion.

---

[5] Specifically, section 507(a)(4) of the Bankruptcy Code provides a priority for:

> [A] allowed unsecured claims, but only to the extent of $10,000 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for -
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

[6] Specifically, section 507(a)(5) of the Bankruptcy Code provides a priority for: allowed unsecured claims for contributions to an employee benefit plan -

> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (continued)
>
> (B) for each such plan, to the extent of --
>
> (i) the number of employees covered by each such plan multiplied by $10,000; less
>
> (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection [regarding certain wages, salaries, or commissions], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5)

8
8480

10-61033-rk    Doc 9    FILED 03/17/10    ENTERED 03/17/10 12:05:41    Page 8 of 10

Notwithstanding the $10,000 limitation placed upon such claims, the Debtor, for the reasons set forth herein, should be permitted to pay such claims in full.

Furthermore, in view of the rehabilitative purposes of the relief requested in the Motions, the Debtor should be permitted the discretion to select whether to pay the prepetition claims of individual creditors within the groups of creditors for which relief is granted. This discretion, which routinely has been granted in other cases,[7] will allow the Debtor to exercise its judgment, on a case-by-case basis, to determine whether payment of any particular creditor will help preserve and enhance the Debtor's ongoing business operations and going concern value.

### III. Conclusion

If the requested relief is not granted, there is a substantial risk that the Debtor's business operations would be significantly — and perhaps irreparably — undermined. If the Motions are denied, the Debtor's business may fail — to the benefit of no party — before the Debtor has had the opportunity even to attempt a reorganization. In this precarious environment, it is especially important for the Debtor to maintain a "business as usual" atmosphere to ensure the smooth and uninterrupted operation of its business. It is the Debtor's business judgment, therefore, that authority to immediately pay the prepetition claims described in the Motions is absolutely critical

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[7] See, e.g., In re Republic Technologies International, LLC, No. 01-51117 (Bankr. N.D. Ohio April 2, 2001); In re LTV Steel Company, Inc., No. 00-43866 (Bankr. N.D. Ohio Dec. 29, 2000 and other dates); In re Pittsburgh-Canfield Corp., No. 00-433-94 (Bankr N.D. Ohio Nov. 17, 2000) (granting the debtors discretion to honor prepetition customer obligations and to pay certain prepetition vendor claims); In re Loewen Group Int'l, Inc., Nos. 99-1244 (PJW) (D. Del. June 1, 1999) (granting debtors discretion to honor certain prepetition customer obligations); In re Montgomery Ward Holding Corp., No. 97-1409 (PJW) (Bankr. D. Del. June 1, 1999) (granting debtors discretion to honor certain prepetition customer obligations); In re Montgomery Ward Holding Corp., No. 97-1409 (PJW) (Bankr. D. Del. July 8, 1997) (same with respect to employee claims); In re MobileMedia Communications, Inc., No. 97-174 (PJW) (Bankr. D. Del. Jan. 30, 1997) (same with respect to payment of prepetition employee claims).

to the success of the Debtor's chapter 11 case and the Debtor's reorganization efforts. Accordingly, for the reasons described herein and in the Motions, the Court should grant the Motions in their entirety.

Respectfully submitted,

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
Courtyard Centre, Suite 307
116 Cleveland Ave., N.W.
Canton, Ohio 44702
Telephone: (330) 588-9700
Facsimile: (330) 588-9713
E-mail: ajdlaw@sbcglobal.net

PROPOSED COUNSEL FOR
THE DEBTOR AND
DEBTOR IN POSSESSION