**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 07:55 PM July 27, 2010**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, CANTON

--------------------------------------------------------x
In re:                                                :    Case No. 10-61033
                                                      :
THE HERALD PRINTING COMPANY                           :    Chapter 11
                                                      :
   an Ohio limited liability company,              :    Judge Russ Kendig
                                                      :
      Debtor and                                 :
      Debtor-in-Possession.                      :
                                                      :
(Employer Tax I.D. No. 34-1050454)                    :
--------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 363(b), (f), (m), AND 365, AND FED. R. BANKR. P. 6004, 6006, AND 9014 (I) AUTHORIZING THE DEBTOR TO SELL SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (II) TO ASSUME AND ASSIGN <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO</u>

Before the Court is the motion (the "Sale Motion"), Docket No. 69, filed by the above-captioned debtor and debtor in possession (the "Debtor") on May 17, 2010, requesting (among other things) the entry of an order pursuant to sections 363(b), (f), (m), and 365 of title 11, United States Code (the "Bankruptcy Code"), and Rules 6004, 6006, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the sale (the "Sale") of substantially all of the Debtor's assets including those used in the Debtor's operations, the Debtor's cash and cash equivalents, and the Debtor's name, all free and clear of all liens, claims, encumbrances, and interests of whatever type or nature (collectively, the "Interests"), (ii) authorizing the Debtor to assume and assign to the Purchaser, as defined herein, certain executory contracts and unexpired leases associated with the Debtor's business and (iii) granting related relief; this Court having set July 15, 2010, as the date for the sale of the Assets and the Assigned Contracts and the Debtor having conducted the sale on July 15, 2010; the Debtor having determined that the Purchaser's bid is the best and highest bid for the Assets; the Court having reviewed and considered the Sale Motion and it appearing that the relief requested in the Sale Motion is in the best interest of the Debtor, its estate, creditors, and other parties in interest in this case; after due deliberation thereon; "Purchase Agreement" shall mean the agreement or agreements between the Debtor as seller, on the one hand, and HPC Acquisition Co., Inc. ("Purchaser") as buyer; "Assets" shall mean the assets to be sold to the Purchaser pursuant to the Purchase Agreement, more fully described on Exhibit A attached hereto, and executory contracts and unexpired leases to be assumed and assigned to the Purchaser shown on Exhibit B hereto (the "Assigned Contracts"); and good cause appearing therefore, it is hereby FOUND AND DETERMINED AS FOLLOWS:

A.   The Court has jurisdiction over the Sale Motion and the transactions contemplated by the Sale Motion pursuant to 28 U.S.C. § 1334 and reference from the District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 157.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case and the Sale Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

39997

B.  The statutory predicates for the relief requested in the Sale Motion are sections 363(b), (f), (m), and 365 of the Bankruptcy Code and Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure.

C.  As evidenced by the affidavit of service, Docket Nos. 71, 73, 74, and 81 previously filed with the Court, and based on the representations of counsel at the hearing held on July 20, 2010, on the Sale Motion (the "Hearing") and upon further notice under Rule 6006 of the Federal Rules of Bankruptcy Procedure provided herein, to any non-Debtor party to an executory contract that the Debtor proposes to assume and assign to the Purchaser, together with proposed cure amounts to be paid by the Purchaser; (i) proper, timely, adequate, and sufficient notice of the Sale Motion and the sale has been provided in accordance with sections 363 and 365 of the Bankruptcy Code and Rules 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure; (ii) such notice was reasonable, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion, is required.

D.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) counsel for the Purchaser; (ii) counsel for the Debtor's prepetition secured lender(s); (iii) the Office of the United States Trustee; (iv) all entities known to have asserted any lien, claim, encumbrance, alleged interest in or with respect to the Assets; (v) all non-Debtor parties to the Assigned Contracts upon notice provided under paragraph C hereof; and (vi) all other entities that have filed requests for notices pursuant to Bankruptcy Rule 2002.

E.  An auction (the "Auction") for the sale of the Debtor's assets was conducted on July 15, 2010 and the result of the Auction was that Purchaser was declared to be the winning bidder. The second place bidder was PAF Investments LLC ("PAF") and PAF was declared the backup bidder in case Purchaser cannot close the transaction.

39997

F.   The Debtor has demonstrated sound business justifications for the Sale and the related transactions pursuant to section 363(b) of the Bankruptcy Code.

G.   The Sale was negotiated, proposed, and agreed to by the Debtor and the Purchaser as parties thereto without collusion, in good faith, and from arm's length bargaining positions. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the Sale to be avoided under section 363(n) of the Bankruptcy Code.  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The sole shareholder of Purchaser is intended to be a trust for the benefit of the children of David and Suzanne Stump (the "Stumps").  The Stumps will be the trustees of the trust, as well as officers and directors of the Purchaser.  David Stump, is President of the Debtor and the Debtor's major shareholder.

H.   The consideration provided by the Purchaser for the Assets and the Assigned Contracts (i) is fair and reasonable; (ii) is the highest and best offer for the Assets and the Assigned Contracts; (iii) will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other available alternative; and (iv) includes the payment of postpetition claims for postpetition delivery of good and services, including fees of retained professionals, to the extent Debtor's cash is insufficient at Closing (as below-defined) to pay such claims..

I.   The sale of the Assets to the Purchaser under the terms of this Order will be a legal, valid, and effective transfer, and will vest in the Purchaser all right, title, and interest of the Debtor to the Assets free and clear of all Interests including, but not limited to, those (i) that purport to give to any party a right or option to consummate in the future, any sale, contingent sale, title retention agreement or lease relating to the Assets (or a right or option to terminate the Debtor's or the Purchaser' rights therein), or any similar rights, and (ii) relating to taxes arising

39997

under or out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the date (the "Closing Date") of the consummation of the Sale (the "Closing").

J.   The Debtor may sell the Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Those holders of Interests and non-Debtor parties who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests fall also within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they claim or may claim an Interest.

K.   Approval and consummation of the Sale at this time is in the best interest of the Debtor, its creditors, its estate, and other parties in interest.

L.   The Purchaser would not consummate the transactions contemplated by the Sale, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Assets were not free and clear of all Interests of any kind or nature whatsoever, or if each Purchaser would, or in the future could, be liable for any such Interests and if the transfer could not be made under section 363 of the Bankruptcy Code.

NOW, THEREFORE, BASED UPON THE FOREGOING FINDINGS OF FACT, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, EFFECTIVE IMMEDIATELY, THAT:

1.   The Sale Motion shall be, and hereby is granted, as further described herein.

2.   Defined terms not otherwise defined in this Order shall have the meanings given them in the Sale Motion.

39997

3. All Objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

4. Any party that received notice of the Sale Motion and did not object shall be deemed to consent to the relief requested therein and ordered hereby.

5. The Sale as presented to the Court at the hearing on this matter, and all of the terms and conditions thereof, are hereby approved as if fully stated herein, and the Debtor is hereby authorized to execute the Purchase Agreement on such terms as contained therein. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, and in accordance with the terms thereof, as may be necessary to give effect to the intent of the parties as represented to the Court and consummate the transactions contemplated by such agreements, documents or instruments without further order of the Court, provided that any such modification, amendment or supplement is not materially different from the terms presented to the Court and does not have a material adverse effect on the Debtor's estate as defined herein, in form and substance.

6. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and to take all actions and execute all documents as may be necessary to consummate the Sale or effect the transactions referenced in or otherwise contemplated by the Purchase Agreement.

7. The Debtor is authorized and directed to execute and deliver, and is empowered to perform under, consummate, and implement, the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take all further actions as may be requested by the

39997

Purchaser for the purpose of assigning, transferring, granting, and conveying to the Purchaser or reducing to possession the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

8.  In connection with the assumption and assignment of the Assigned Contracts, the Purchaser shall promptly pay or agree to the payment terms for all Cure Amounts.  The Debtor shall notice all non-Debtor parties to the Assigned Contracts of the Purchaser's payment terms for all Cure Amounts and, the Debtor shall not be required to take any other action or to make any other payment with respect to any defaults under the Assigned Contracts.

9.  Subject to the provisions of paragraph 8 of this Order, the Debtor is authorized and directed to assume and assign the Assigned Contracts to the Purchaser, free and clear of all Interests, and the assignment of the Assigned Contracts is valid under section 365 of the Bankruptcy Code and the Assigned Contracts will be deemed to have been assumed by the Debtor and assigned to the Purchaser effective as of the Closing Date.  Pursuant to section 365(k) of the Bankruptcy Code, the assignment by the Debtor of the Assigned Contracts relieves the Debtor and its estate from any liability from any breach of the Assigned Contracts after the Closing Date.

10. The purchase price to be paid by the Purchaser for the sale and transfer of the Assets under the terms of the Sale and the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  The sale of the Assets and other transactions contemplated by the Purchase Agreements may not be avoided under sections 363(k) or (n) of the Bankruptcy Code.

11. The transactions contemplated by the Sale and the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the

39997

Bankruptcy Code and, accordingly, the reversal or modification on appeal of this Order shall not affect the validity of the Sale of Assets to the Purchaser, unless such Sale and this Order are duly stayed pending appeal. The Purchaser is a purchaser in good faith of the Assets for all purposes.

12. All of the Debtor's interest in the Assets shall be, as of the Closing Date, transferred to and vested in the Purchaser. Upon the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of any assets acquired by the Purchaser under the Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the assets acquired by the Purchaser under the Purchase Agreement. In accordance with the Sale and the Purchase Agreement, from and after the Closing Date, the applicable Purchaser shall be granted immediate and unfettered access to the Assets. If Purchaser does not close the transaction by August 31, 2010, then the sale of the assets to PAF shall be approved.

13. Except as expressly permitted or otherwise specifically provided for in the Purchase Agreement and this Order, pursuant to sections 105(a), 363(f), and 365 of the Bankruptcy Code, the Assets shall be transferred to the Purchaser free and clear of all Interests of any kind or nature whatsoever, (including but not limited to any liens, claims, rights or encumbrances of any governmental authority or entity, and any other claims, known or unknown, contingent or non-contingent for any environmental liability or products liability), with all such Interests to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against such assets, subject to any claims and defenses that the Debtor and other parties having Interests in the Assets may possess with respect thereto.

14. All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and other regulatory authorities, lenders, trade and other creditors holding Interests of any kind or nature whatsoever against or in the Assets (whether

39997

legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to the operation of the Debtor's business prior to the Closing Date, are hereby forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, its officers, and any directors and shareholders of the Purchaser, such persons' or entities' Interests. The Purchaser is buying the Assets free and clear of all liens, claims, encumbrances, and interests of whatever type or natures, including any claims that it may be a successor in interest. All holders or beneficiaries of the Interests are hereby directed to cooperate with the Purchaser in delivering such documents reasonably requested by the Purchaser, which may be necessary to evidence and effectuate the extinguishment of any Interests from or against the Assets.

15. If any person or entity that has filed financing statements, assignments, security agreements, lis pendens, or other documents or agreements evidencing Interests in any of the Assets shall not have delivered to the Debtor prior to the Closing Date in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all Interests which the person or entity has with respect to the Seller or otherwise, then (a) the Debtor is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Assets; and (b) the Purchaser are hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all interests in the Assets of any kind or nature whatsoever.

16. The Debtor is authorized and directed to transfer immediately all proceeds of the Sale to an escrow account, the escrow agent for which shall be Debtor's counsel. The deposit of $450,000.00 (the "Deposit") is nonrefundable unless this Court does not approve the transactions

39997

contemplated in the APA. In the event the Sale does not close by August 31, 2010, then the Deposit of $450,000.00 shall be delivered to PAF. Such delivery to PAF shall be absolute, unconditional and should be made immediately without further notice or action by any party.

17. This Court retains jurisdiction to endorse and implement the terms and provisions of the Sale and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser; (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtor; (c) resolve any disputes arising under or related to the Sale or the Purchase Agreement, except as otherwise provided therein; and (d) interpret, implement, and enforce the provisions of this Order.

18. To the extent not inconsistent with or prohibited by applicable law, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Assets other than those expressly assumed in the Sale and under the Purchase Agreement or arising under the Assigned Contracts from and after the Closing Date. Without limiting the generality of the foregoing exclusion, the Purchaser is assuming no obligation for, and (to the extent consistent with applicable law) shall have no responsibility with respect to, the Debtor's accounts payable or liabilities under environmental laws. The Purchaser shall be under no obligation to hire any of the Debtor's employees and shall not assume any obligations to or with respect to such employees, including, without limitation, any obligations for employment compensation, benefits or severance or any obligations under or with respect to any ERISA plan, any multiemployer plan or otherwise, including, without limitation, obligations arising under COBRA, any obligation to provide compensation or benefits pursuant to any employment contract, and any obligations under or with respect to any collective bargaining

39997

agreements. Except for such obligations expressly assumed by the Purchaser, all persons are hereby enjoined from asserting or prosecuting any claim against the Purchaser to recover on any claim such person had, has or may have against the Debtor, its estate or the Assets.

19. The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser, and their respective affiliates, successors, and assigns and any affected third parties (including, but not limited to, all non-Debtor parties asserting interests in the Assets), notwithstanding any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, upon which trustee such terms and provisions likewise shall be binding.

20. The failure specifically to include any particular provisions of the Sale or the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Sale and the Purchase Agreement be authorized and approved in their entirety as if fully stated herein.

21. Any notices of appeal of this Order must be in writing and must be filed with the Court and served on (a) Anthony J. DeGirolamo, Courtyard Centre, Suite 307, 116 Cleveland Avenue NW, Canton, Ohio 44702; (b) McDonald Hopkins, Attn. Paul Linehan, Esq. 600 Superior Ave. E., Suite 2100, Cleveland, Oho 44114; and (c) Brouse McDowell, Attn. Marc Merklin, Esq., 388 S. Main St., Suite 500, Akron, Ohio 44311. This Order shall be effective immediately upon its entry. The stays provided under Bankruptcy Rules 6004(g) and 6006(d) are both hereby waived and no stay shall apply to the Sale. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rule 7062 or otherwise. This Order is, and shall be entered by the Clerk in the records of the Debtors' cases as, a "final" order pursuant to Fed. R. Civ. P. 54 and 58 and Bankruptcy Rules 5003, 7054, and 9021.

###

39997

**PREPARED BY:**

Anthony J. DeGirolamo (0059265)
Courtyard Centre, Suite 307
116 Cleveland Avenue NW
Canton, Ohio 44702
Telephone:  330-588-9700
Facsimile:  330-588-9713
E-mail:  ajdlaw@sbcglobal.net

COUNSEL FOR THE DEBTOR AND
DEBTOR IN POSSESSION

39997

# ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the "Agreement") is made and entered into this ___ day of July, 2010, by and between **The Herald Printing Company,** an Ohio corporation having an address of 625 South Kibler Street, New Washington, Ohio 44854**,** ("**Seller**") and **HPC Acquisition Co., Inc.**, an Ohio corporation having an address of 388 S. Main Street, Suite 500, Akron, Ohio 44311 (the "**Purchaser**").

WHEREAS, Seller is engaged in the business of commercial printing (the "Business");

WHEREAS, Seller filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Ohio (the "Bankruptcy Court") as Case No. 10-61033 (the "Bankruptcy Case") on March 17, 2010;

WHEREAS, upon the terms and subject to the conditions set forth herein and as authorized under the Bankruptcy Code, Purchaser desires to purchase from Seller, and Seller desires to sell to Purchaser, substantially all of Seller's personal property assets ("Purchased Assets") in exchange for the payment to Seller of the Purchase Price and the assumption by Purchaser of the Assumed Liabilities; and

WHEREAS, the transactions contemplated by this Agreement (the "Transactions") are subject to the approval of the Bankruptcy Court and will be consummated only pursuant to this Agreement and a Sale Order, as below-defined, to be entered in the Bankruptcy Case and other applicable provisions of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, and intending to be bound hereby, the parties hereby agree as follows:

## 1.0    Purchase and Sale of Assets

1.1    <u>Purchased Assets</u>.  The Seller agrees to and shall sell, convey, transfer, assign and deliver to the Purchaser under the terms and conditions set forth herein, free and clear of all liens, mortgages, pledges, encumbrances, claims, charges and interests of every kind, on the terms and subject to the conditions set forth in this Agreement those assets listed on <u>Schedule A</u> which include, but are not limited to, all equipment and machinery, all inventory, all accounts, notes and other receivables, cash and cash equivalents, all intellectual property, all goodwill associated with the intellectual property, all other tangible and intangible property assets of Seller to the extent primarily used in or relating to the operating of the Business including the name "The Herald Printing Company" and contract rights, and all Assumed Contracts listed on <u>Schedule B</u>.

1.2    <u>Excluded Assets</u>.  Notwithstanding anything to the contrary contained in this Agreement, the Purchased Assets shall not include any of the following assets (collectively, the

- -

"Excluded Assets"): any real property owned by Seller; all causes of action arising or held by Seller under Chapter 5 of the Bankruptcy Code; any shares of capital stock or other equity interests of Seller or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests of Seller; any minute books, stock ledgers, corporate seals and stock certificates of Seller, and other similar books and records that Seller is required by law to retain and all tax returns, financial statements and corporate or other entity filings; all insurance policies, all credits or premium refunds thereunder, all interests of Seller in any insurance policies, and the cash surrender value or other proceeds of, or claims of, such insurance policies; all rights and claims in or to any refunds or credits of, or with respect to any taxes, assessments or similar charges paid by or on behalf of Seller, in each case to the extent applicable to any period prior to the Closing Date (but, not any of the foregoing paid by Purchaser); any professional retainers paid by Seller; any and all rights, claims and benefits under any contract that is not an Assumed Contract; any other asset of Seller that is excluded pursuant to the terms of the Sale Order; and all assets of Seller not identified as a Purchased Asset or Assumed Contract or not otherwise identified herein.

1.3  Assumption of Liabilities.  On the terms and subject to the conditions and limitations set forth in this Agreement, at the Closing, Purchaser shall assume, effective as of the Closing, the following Liabilities of Seller existing as of the Closing (collectively, the "Assumed Liabilities") and no others:

(a)  all Liabilities arising after Closing under or pursuant to any Assumed Contracts which relate to the performance of the Assumed Contracts after Closing;

(b)  all Liabilities occurring, arising out of or relating to the ownership and operation of the Business and the Purchased Assets after Closing;

(c)  to the extent not paid at or prior to Closing, all claims and Liabilities for Cure Amounts;

(d)  to the extent not paid in advance of Closing, postpetition claims for postpetition delivery of goods and services, including fees of retained professionals; and

(e)  any other liability of Seller that is assumed by Purchaser pursuant to the terms of the Sale Order.

1.4  Assumed Contracts.

(a)  Assumed Contracts List.  Seller shall assume and assign to Purchaser all of the Assumed Contracts listed on Schedule B, as such Schedule may be supplemented by mutual agreement of Seller and Purchaser.

(b)  Payment of Cure Amounts.  To the extent not paid at or prior to Closing, Purchaser hereby agrees to pay all Cure Amounts.

- -

**2.0    Purchase Price; No Assumption of Liabilities or Successor; Hazardous Materials**

2.1    <u>Purchase Price</u>.  Purchaser agrees to pay the total sum of $650,000.00 for the Assets (the "Purchase Price") on the Closing Date.  The Purchase Price shall be paid as follows:

(a)    On execution of this Agreement, Purchaser shall pay Seller a deposit of $10,000.00.

(b)    No later than the close of business July 19, 2010, Purchaser shall pay Seller an additional deposit of $440,000.00 (and together with the $10,000.00, the "Deposit").  The Deposit shall be non-refundable unless the Bankruptcy Court does not approve the transactions contemplated herein.

(c)    The balance of the Purchase Price shall be paid in cash to Seller on the Closing Date.

2.2    <u>No Assumed Liabilities</u>.  Other than as otherwise agreed to herein, the Purchaser does not agree to and will not assume, be responsible for or agree to pay, discharge or perform when lawfully due any of the liabilities, contracts, commitments or other obligations of the Seller, including, without limitation, judgments, accounts payable, taxes, claims relating to products liability, securities law violations, pension welfare plan contributions, and collective bargaining agreements.

2.3    <u>No Successor</u>.  Purchaser shall not be a successor-in-interest to Seller and shall have no successor liability to Seller or any creditor, shareholder, officer or employee of Seller under any legal theory.

**3.0    Closing and Sale Order**

3.1    <u>Time and Place of the Closing</u>.  The closing of the sale of the Assets shall take place on or before August 31, 2010, at a location to be agreed upon between the parties.  Throughout this Agreement, such event is referred to as the "Closing" and such date is referred to as the "Closing Date."  It is intended that the Closing shall take place as soon as Purchaser has satisfied itself that the Seller and the named creditors can deliver clear title to the Purchased Assets upon their receipt of the Purchase Price.

3.2    <u>Deliveries by Seller</u>.  At the Closing, Seller shall deliver, or cause to be delivered to Purchaser:

(a)    the Bill of Sale;

(b)    the Assignment and Assumption Agreement;

(c)    the Assignment of Domain Names Agreement;

(d)    the Assignment of Trademarks Agreement;

- -

(e)     the Sale Order;

(f)     the PAF and Stump Releases (as below-defined); and

(g)     all other instruments of assignment, conveyance and transfer, together with any transfer declarations or other filings, in form and substance reasonably acceptable to Purchaser, as may be necessary to convey good and marketable title to the Purchased Assets to Purchaser in accordance with the terms and conditions hereof.

3.3     <u>Deliveries by Purchaser</u>.  At the Closing, Purchaser shall deliver, or cause to be delivered to Seller:

(a)     by wire transfer or other immediately available funds, an amount equal to the Purchase Price;

(b)     executed counterparts of the Bill of Sale;

(c)     executed counterparts of the Assignment and Assumption Agreement;

(d)     executed counterparts of the Assignment of Domain Names Agreement;

(e)     executed counterparts of the Assignment of Trademarks Agreement; and

(f)     such other documents, instruments and certificates as Seller may reasonably request to transfer, assign and delegate the Purchased Assets and Assumed Liabilities to Purchaser in accordance with the terms and conditions hereof.

3.4     <u>Extended Use of Cash Collateral</u>.  Seller will have obtained an extension for the use of its cash collateral until the earlier of Closing or August 31, 2010.

3.5     <u>Other Closing Matters</u>.  Each of the parties shall use their reasonable efforts to take such other actions required hereby to be performed by it prior to or on the Closing Date.

3.6     <u>Additional Condition to Close (Entry of Sale Order)</u>.  Purchaser agrees that it will promptly take such commercially reasonable actions as are reasonably requested by Seller to assist in obtaining entry of an acceptable order under Section 363 of the Bankruptcy Code (the "Sale Order") and a finding of adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code.  The Sale Order shall be reasonable acceptable to Purchaser and PAF Investments LLC.  In the event the entry of the Sale Order shall be appealed, Seller and Purchaser shall use their respective reasonable efforts to defend such appeal.  Without limiting the generality of the foregoing, such Sale Order shall find and provide, among other things, that

- -

(a) the Purchased Assets sold to Purchaser pursuant to this Agreement shall be transferred to Purchaser free and clear of all Liens, claims and interests, such Liens, claims and interests to attach to the Purchase Price;

(b) Purchaser has acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code;

(c) this Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions;

(d) the Bankruptcy Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement, or the breach hereof; and

(e) this Agreement and the Transactions may be specifically enforced against and binding upon, and not subject to rejection or avoidance by, Seller or any Chapter 7 or Chapter 11 trustee of Seller.  In addition, the Sale Order shall approve and authorize the assumption and assignment of the Assumed Contracts such that the Assumed Contracts will be in full force and effect from and after the Closing with any non-Seller parties being barred and enjoined from asserting against Purchaser, among other things, defaults, breaches or claims (including cure claims under Section 365 of the Bankruptcy Code, except as otherwise specifically provided in the Sale Order) existing as of the Closing or by reason of the Closing.

**4.0      Representations and Warranties of the Seller**

In order to induce the Purchaser to enter into this Agreement and to consummate the transactions contemplated hereunder, the Seller makes the following representations and warranties:

4.1      Power and Authority of the Seller.

(a)      Seller is a corporation duly organized and legally existing in good standing under the laws of the State of Ohio.

(b)      Seller has the power and authority to execute and perform this Agreement and all documents and instruments to be executed by each Seller pursuant to this Agreement. This Agreement has been duly executed and delivered by the Seller and constitutes an enforceable obligation of the Seller in the normal and ordinary course of Seller's business.

4.2      Good Title to and Condition of the Purchased Assets.  Upon conveyance to the Purchaser, the Seller shall have good and marketable title to the Purchased Assets free and clear of all liens, mortgages, pledges, encumbrances, claims or interests.

4.3      Litigation Involving the Seller.  There are no actions, suits, claims, governmental investigations or arbitration proceedings pending or to the knowledge of the Seller threatened against or affecting the Purchased Assets and, to the best of Seller's knowledge, there is no basis

- -

for any of the foregoing. To the best of Seller's knowledge, there are no outstanding orders, decrees or stipulations issued by any federal, state, local or foreign judicial or administrative authority in any proceeding to which the Seller is or was a party which would prohibit the sale of the Purchased Assets.

       4.4   <u>Accuracy of Information Furnished by the Seller</u>. To the best of Seller's knowledge, no representation, statement or information made or furnished by the Seller to the Purchaser, including those contained in this Agreement and the various schedules attached hereto and the other information and statements referred to herein and previously furnished by the Seller to the Purchaser pursuant hereto, contains or shall contain any untrue statement of a material fact or omits or shall omit any material fact necessary to make the information contained therein not misleading.

       4.5   <u>Broker</u>. The Seller has not employed or retained any person, firm or corporation to bring about or to represent it in the transactions contemplated hereby.

       4.6   <u>Miscellaneous</u>. There are no pending lawsuits, no threatened lawsuits, and no asserted or threatened violations which may affect the Purchased Assets or any part thereof or Seller's ability to perform this Agreement.

## 5.0   Additional Covenants of the Seller

       5.1   <u>Best Efforts</u>. The parties will use their best efforts to cause to be satisfied as soon as practicable and prior to the Closing Date all of the conditions to their respective obligations to effectuate the Transactions.

       5.2   <u>Conveyance of Title to Purchased Assets</u>. Upon the payment of the Purchase Price, Seller shall convey title to Purchaser of the Purchased Assets.

       5.3   <u>Conduct of Business</u>. Seller shall conduct its business in the ordinary course between the date hereof and the Closing Date and shall not permit a material deterioration in the amount of inventory and accounts receivable.

## 6.0   Representation and Warranties of Purchaser

       6.1   <u>Power and Authority of the Purchaser</u>.

           (a)   Purchaser is a corporation duly organized and legally existing in good standing under the laws of the State of Ohio.

           (b)   Purchaser has the power and authority to execute and perform this Agreement and all documents and instruments to be executed by Purchaser pursuant to this Agreement. This Agreement has been duly executed and delivered by the Purchaser and constitutes an enforceable obligation of the Purchaser in the normal and ordinary course of Purchaser's business.

- -

6.2     No Untrue Representation.  To Purchaser's knowledge, no representation or warranty made by the Purchaser in this Agreement contains or will contain any untrue statement of a material fact.

6.3     Inspection of Purchased Assets.   Purchaser acknowledges that it had an opportunity to inspect and did inspect all of the Purchased Assets to be sold under this Agreement and agrees to accept them as is, where is, with all faults, except that Purchaser shall have no obligation to accept any Purchased Asset which contain hazardous materials or which are contaminated.

## 7.0     Conditions to the Obligation of the Purchaser

The obligation of the Purchaser to purchase the Purchased Assets shall be subject to the fulfillment at or prior to the Closing Date of each of the following conditions:

7.1     Accuracy of the Seller's Representations and Warranties and Compliance by the Seller with Its Obligations.  The representations and warranties of the Seller contained in this Agreement shall have been true and correct at and as of the date hereof, and they shall be true and correct at and as of the Closing Date with the same force and effect as though made at and as of that time.  The Seller shall have performed and complied with all of its obligations required by this Agreement to be performed or complied with at or prior to the Closing Date.

7.2     Receipt of Necessary Consents.  All necessary consents or approvals of third parties, including PAF Investments LLC, to any of the transactions contemplated hereby, the absence of which would materially affect Purchaser's rights hereunder, shall have been obtained and shown by written evidence satisfactory to the Purchaser.

7.3     No Adverse Litigation.  There shall not be pending or threatened any action or proceeding by or before any court or other governmental body which shall seek to restrain, prohibit or invalidate the sale of the Purchased Assets to the Purchaser or any other transaction contemplated hereby, or which might affect the right of the Purchaser to own, operate in their entirety or control the Purchased Assets, and which, in the judgment of the Purchaser, makes it inadvisable to proceed with the transaction contemplated hereby.

7.4     Stump and PAF Releases.  PAF Investments, LLC along with David Stump, Suzanne Stump, Stump Converting, Inc., Stump Investments, HPC Acquisition Co., Inc., and any other guarantor or surety of the Seller's obligations to PAF Investments, LLC will execute and deliver mutual releases.

## 8.0     Conditions to Obligations of Seller

8.1     The obligation of Seller to consummate the purchase and sale of the Purchased Assets as contemplated hereby is subject to the fulfillment of the conditions set forth in this Section at or prior to the Closing, any of which may be waived by Seller in its sole discretion.

- -

(a)     All of the agreements and covenants contained in this Agreement that are to be complied with, satisfied and performed by Purchaser on or before the Closing Date shall, in all material respects have been complied with, satisfied and performed.

(b)     All of the representations and warranties made by Purchaser in this Agreement or in any certificate or document furnished or to be furnished to Seller hereunder, shall be true and correct in all material respects both on and as of the date of this Agreement, and on and as of the Closing Date.

## 9.0     Certain Actions After the Closing

9.1     Execution of Further Documents and Further Assistance.  From and after the Closing Date, upon the reasonable request of the Purchaser, the Seller shall execute, acknowledge and deliver all such further acts, bills of sale, assignments, transfers, conveyances, powers of attorney and assurances as may be reasonably required to convey and transfer to and vest in the Purchaser and protect its right, title and interest in the Purchased Assets, and as may be appropriate otherwise to carry out the transactions contemplated by this Agreement.

## 10.0     Miscellaneous

10.1     Amendment and Modification.  The parties hereto may amend, modify and supplement this Agreement in such manner as may be agreed upon by them in writing signed by both parties.

10.2     Termination.

(a)     Anything to the contrary herein notwithstanding, this Agreement may be terminated and the transaction contemplated hereby may be abandoned:

      i.      by the mutual written consent of all of the parties hereto at any time prior to the Closing Date;

      ii.      by the Purchaser at any time prior to the Closing Date if there shall be a pending or threatened action or proceeding by or before any court or other governmental body which shall seek to restrain, prohibit or invalidate the sale of the Purchased Assets to the Purchaser or any other transaction contemplated hereby including the Sale, or which might affect the right of the Purchaser to own, operate in their entirety or control the Purchased Assets and which, in the judgment of the Purchaser, makes it inadvisable to proceed with the actions contemplated by this Agreement.  In the event of a threatened action or proceeding, Seller shall provide notice with all information in its possession.  Purchaser may postpone the closing and shall have fifteen (15) business days to terminate this Agreement under this subsection.  If Purchaser fails to do so,

- -

Purchaser's rights hereunder with respect to the disclosed action shall be deemed waived;

iii.      by either party in the event of the material breach by the other party of any provision of this Agreement, which breach is not remedied by the breaching party within thirty (30) days after receipt of notice thereof from the terminating party.

(b)      The risk of any loss to the Purchased Assets to be sold by the Seller hereunder and all liability with respect to injury and damage occurring in connection therewith shall be the sole responsibility of the Seller until the completion of the Closing and shall be that of the Purchaser thereafter. If any material part of said Purchased Assets shall be damaged by fire or other casualty prior to the Closing Date hereunder, the Purchaser shall have the right and option:

i.      to terminate this Agreement, without liability to any party thereto; or

ii.      to proceed with the Closing hereunder, in which event the Purchaser shall be entitled to receive and retain the insurance proceeds arising from such casualty or to offset the amount of such casualty or loss from the Purchase Price.

10.3   <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns, heirs and legal representatives.

10.4   <u>Entire Agreement</u>. This Agreement and the exhibits and schedules attached hereto contain the entire agreement of the parties hereto with respect to the purchase of the Purchased Assets and the other transactions contemplated herein, and supersede all prior understandings and agreements of the parties with respect to the subject matter hereof. Any reference herein to this Agreement shall be deemed to include the schedules and exhibits attached hereto.

10.5   <u>Risk of Loss; Insurance</u>. Risk of loss to the Purchased Assets shall remain on the Seller at all times.

10.6   <u>Headings</u>. The descriptive headings in this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

10.7   <u>Execution In Counterpart</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original.

10.8   <u>Notices</u>. Any notice, request, information or other document to be given hereunder to any of the parties by any other party shall be in writing and delivered personally or sent by certified mail, postage prepaid, as follows:

- -

If to the Seller, addressed to:

**The Herald Printing Company**
625 South Kibler Street
New Washington, Ohio  44854

with a copy to :

Anthony J. DeGirolamo Esq.
Courtyard Centre, Suite 307
116 Cleveland Ave. NW
Canton, OH 44702
Facsimile No. (330) 588-9713


If to the Purchaser, addressed to:

**HPC Acquisition Co., Inc.**
742 W. Mansfield Street
New Washington, Ohio  44854

with a copy to :

Brouse McDowell, LPA
388 South Main Street, Suite 500
Akron, Ohio 44311
Attn:  Marc B. Merklin
Facsimile No. (330) 253-8601

If to PAF, addressed to:

**Celtic Cross Group, LLC**
Michael R. Cavanaugh, President
The Hanna Building
1422 Euclid Ave., Suite 727
Cleveland, Ohio  44115

with a copy to :

McDonald Hopkins LLC
600 Superior Ave., East, Suite 2100
Cleveland, Ohio  44114
Attn:  Paul W. Linehan
Facsimile No. (216) 348-5474

- -

Any party may change the address to which notices hereunder are to be sent to it by giving written notice of such change of address in the manner herein provided for giving notice. Any notice delivered personally shall be deemed to have been given on the date it is so delivered, and any notice delivered by registered or certified mail shall be deemed to have been given on the date it is received.

10.9  <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio applicable to contracts made and to be performed therein.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

- -

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**SELLER**

**THE HERALD PRINTING COMPANY**

By:_____
Name:_____
Title:_____

**PURCHASER**

**HPC ACQUISITION CO., INC.**

By:_____
Name:_____
Title:_____

- -

# SCHEDULE A

Herald Printing Co., Inc.

AGED RECEIVABLE TRIAL BALANCE - SUMMARY

CAurand

Monday, July 12, 2010

TIME:     11:06

Statement / Cut-Off Date: 07/12/10

Aging Date: 07/12/10

| Cust Numb | Customer Name | Phone | Srep Num | Balance | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91+ Days |
|---|---|---|---|---|---|---|---|---|---|
| 01155 | ABC Printers Inc. | 410-213-2022 | 010 | 5,538.10 | 7,523.49 | 0.00 | 0.00 | 0.00 | -1,985.39 |
| 01307 | Advision Associates Inc | 330-899-9500 | 010 | 4,802.70 | 0.00 | 60.00 | 1,484.11 | 0.00 | 3,258.59 |
| | | Service Charges*: | | | | | | | |
| 02160 | Ann Street Graphics | 304-428-4711 | 002 | 10,878.13 | 518.92 | 3,931.12 | 5,424.86 | 1,003.23 | 0.00 |
| | | Service Charges*: | | | | | | | |
| 02570 | Ashland University | 419-289-5105 | 003 | 4,617.84 | 0.00 | 0.00 | 0.00 | 0.00 | 4,617.84 |
| | | Service Charges*: | | | | | | | |
| 02571 | Ashbrook Center | 419-289-5428 | 003 | 384.99 | 0.00 | 0.00 | 0.00 | 0.00 | 384.99 |
| | | Service Charges*: | | | | | | | |
| 03015 | Badertscher | 740-383-2833 | 002 | 6,898.62 | 3,287.79 | 0.00 | 0.00 | 0.00 | 3,610.83 |
| | | Service Charges*: | | | | | | | |
| 03902 | Bloom's Printing , Inc. | 740-922-1765 | 002 | 6,852.69 | 3,904.10 | 0.00 | 2,948.59 | 0.00 | 0.00 |
| 04350 | Barnes Distribution | 216-430-5727 | 008 | 10,400.82 | 3,117.72 | 2,970.21 | 4,312.89 | 0.00 | 0.00 |
| 04708 | Buckeye Central High | 419-492-2286 | 001 | 90.98 | 0.00 | 0.00 | 0.00 | 0.00 | 90.98 |
| | | Service Charges*: | | | | | | | |
| 05020 | CSS Publishing | 800-241-4056 | 002 | 31,643.01 | 0.00 | 0.00 | 0.00 | 0.00 | 31,643.01 |
| | | Service Charges*: | | | | | | | |
| 05075 | Case Western Reserve Univ | 216-231-4567 | 074 | 5,299.97 | 0.00 | 0.00 | 5,299.97 | 0.00 | 0.00 |
| 05425 | Cedar Point/Cedar Fair | 419-627-2229 | 003 | 2,398.07 | 2,398.07 | 0.00 | 0.00 | 0.00 | 0.00 |
| 05835 | Chelsea Building Products | 412-826-8077 | 002 | 1,209.47 | 0.00 | 45.05 | 1,072.52 | 91.90 | 0.00 |
| | | Service Charges*: | | | | | | | |
| 06260 | Computer Fun | 800-448-2385 | 002 | 18.87 | 0.00 | 0.00 | 0.00 | 0.00 | 18.87 |
| | | Service Charges*: | | | | | | | |
| 06298 | Coykendall Design | 740-387-5617 | 002 | 2,105.92 | 0.00 | 0.00 | 0.00 | 0.00 | 2,105.92 |
| | | Service Charges*: | | | | | | | |
| 06457 | Creative Design & Pkging | 440-835-4380 | 008 | 1,095.34 | 0.00 | 0.00 | 0.00 | 0.00 | 1,095.34 |
| | | Service Charges*: | | | | | | | |
| 06468 | Lesley, Inc. | 440-933-9500 | 074 | 9,723.33 | 1,805.99 | 7,917.34 | 0.00 | 0.00 | 0.00 |
| 07088 | DAS Construction | 800-282-3714 | 002 | 122.26 | 0.00 | 0.00 | 0.00 | 0.00 | 122.26 |
| | | Service Charges*: | | | | | | | |
| 07487 | Detrow & Underwood | 419-289-0265 | 003 | 61,239.73 | 1,500.24 | 2,195.32 | 0.00 | 0.00 | 57,544.17 |
| | | Service Charges*: | | | | | | | |
| 07775 | Diverse Inc | 330-873-6763 | 002 | 8,184.41 | 0.00 | 1,905.92 | 0.00 | 0.00 | 6,278.49 |
| | | Service Charges*: | | | | | | | |
| 10045 | Harvey Advertising & Desi | 419-422-8601 | 002 | 595.90 | 0.00 | 595.90 | 0.00 | 0.00 | 0.00 |
| 10071 | Gerber's Poultry | 800-362-7381 | 002 | 6,154.62 | 6,154.62 | 0.00 | 0.00 | 0.00 | 0.00 |
| 10133 | Mansfield Plumbing Prod. | 419-938-5211 | 003 | 2,872.33 | 1,035.71 | 1,836.62 | 0.00 | 0.00 | 0.00 |
| 10183 | First Choice Automotive | 440-236-3914 | 060 | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 |
| | | Service Charges*: | | | | | | | |
| 10236 | Kalmbach Feeds | | 002 | 190.88 | 0.00 | 139.57 | 0.00 | 51.31 | 0.00 |
| 10322 | AMINA RE | 410-507-4126 | 010 | 1,172.45 | 0.00 | 0.00 | 0.00 | 1,172.45 | 0.00 |
| | | Service Charges*: | | | | | | | |
| 10338 | Cleveland Metroparks | 216-635-3263 | 074 | 9,468.41 | 9,468.41 | 0.00 | 0.00 | 0.00 | 0.00 |
| 10365 | Macs Printing | 330-869-0005 | 003 | 23,854.91 | 0.00 | 0.00 | 0.00 | 0.00 | 23,854.91 |
| | | Service Charges*: | | | | | | | |
| 10438 | Kibler House Gallery | 419-492-9615 | 050 | 479.74 | 0.00 | 0.00 | 0.00 | 0.00 | 479.74 |
| | | Service Charges*: | | | | | | | |
| 10515 | IHRA Motorsports | 419-680-4215 | 003 | 1,595.52 | 1,108.79 | 0.00 | 0.00 | 0.00 | 486.73 |
| | | Service Charges*: | | | | | | | |
| 10528 | Cooper Tires | 419-427-4789 | 002 | 1,025.22 | 1,025.22 | 0.00 | 0.00 | 0.00 | 0.00 |
| 10578 | Old Time Trucks | 765-935-5301 | 007 | 10,445.19 | 7,853.05 | 265.62 | 2,326.52 | 0.00 | 0.00 |
| 10604 | Gazette Publishing Co. | 419-483-4190 | 003 | 912.49 | 0.00 | 0.00 | 0.00 | 0.00 | 912.49 |
| | | Service Charges*: | | 44.90 | | | | | |
| | | Total Unapplied Deposits: | | -186.62 | | | | | |
| 10727 | Waterloo Intl. Funeral | 260-837-4081 | 002 | 5,672.64 | 0.00 | 4,216.92 | 0.00 | 0.00 | 1,455.72 |
| | | Service Charges*: | | | | | | | |
| 10737 | BSquared | 212-777-2044 | 001 | 3,114.46 | 0.00 | 0.00 | 0.00 | 0.00 | 3,114.46 |
| | | Service Charges*: | | | | | | | |
| 10743 | DCI | 419-625-5825 | 003 | 6.56 | 0.00 | 0.00 | 0.00 | 0.00 | 6.56 |
| | | Service Charges*: | | | | | | | |
| 10772 | Midazo | 724-258-3319 | 001 | 165,331.54 | 0.00 | 3,266.05 | 0.00 | 0.00 | 162,065.49 |
| | | Service Charges*: | | | | | | | |
| 10793 | Joshua Business Graphics | 800-569-3969 | 002 | 1,445.56 | 1,445.56 | 0.00 | 0.00 | 0.00 | 0.00 |
| 10838 | Cub Sales | 330-273-8669 | 000 | 12,382.95 | 3,419.50 | 3,581.76 | 4,324.30 | 0.00 | 1,057.39 |
| | | Service Charges*: | | | | | | | |
| 10849 | Crawford Machine Inc. | 419-468-9122 | 003 | 725.21 | 725.21 | 0.00 | 0.00 | 0.00 | 0.00 |
| 10999 | Commercial Turf Products | | 000 | 1,622.66 | 1,622.66 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11026 | Tried Communications Inc | 330-237-3531 | 003 | 1,008.80 | 0.00 | 0.00 | 0.00 | 0.00 | 1,008.80 |
| | | Service Charges*: | | | | | | | |
| 11180 | Kostka Enterprises | | 001 | 14,203.36 | 0.00 | 0.00 | 0.00 | 0.00 | 14,203.36 |
| | | Service Charges*: | | | | | | | |

| Cust Numb | Customer Name | Phone | Srep Num | Balance | Current | 1 – 30 Days | 31 – 60 Days | 61 – 90 Days | 91+ Days |
|---|---|---|---|---|---|---|---|---|---|
| 11204 | Superior Beverage | 614-294-3555 | 016 | 2,618.52 | 2,618.52 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11287 | NTRA Advantage | 866-678-4289 | 015 | 18,353.94 | 2,645.64 | 0.00 | 0.00 | 508.11 | 15,200.19 |
| | Service Charges*: | | | | | | | | |
| 11344 | MTD-Tupelo Production | 662-568-9077 | 000 | 137.98 | 0.00 | 0.00 | 0.00 | 0.00 | 137.98 |
| 11388 | Terry Ferrell | 614-857-9892 | 015 | 39.57 | 0.00 | 0.00 | 0.00 | 0.00 | 39.57 |
| | Service Charges*: | | | | | | | | |
| 11402 | Universal Media Syndicate | 330-966-9000 | 007 | 27,444.56 | 12,502.10 | 4,392.59 | 10,046.20 | 503.67 | 0.00 |
| 11418 | National Swine Registry | 765-463-3594 | 002 | 333.91 | 333.91 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11419 | Townsend's Sales Inc. | 317-738-4047 | 002 | 1,326.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,326.00 |
| | Service Charges*: | | | | | | | | |
| 11421 | Rhino Rubber LLC | 877-744-6603 | 003 | 893.67 | 0.00 | 893.67 | 0.00 | 0.00 | 0.00 |
| 11424 | Grant Forest Products | 803-505-4493 | 002 | 1,633.65 | 0.00 | 0.00 | 1,550.77 | 0.00 | 82.88 |
| | Service Charges*: | | | | | | | | |
| 11425 | First Ohio Credit Union | 419-435-8513 | 002 | 2,679.51 | 2,679.51 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11429 | Oilfield Graphics | 330-793-2471 | 002 | 10,899.48 | 10,899.48 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11443 | Bill Synk | 440-785-1983 | 001 | 7,048.25 | 0.00 | 0.00 | 0.00 | 0.00 | 7,048.25 |
| | Service Charges*: | | | | | | | | |
| 11458 | Layne Alan Enterprises | 419-282-9871 | 003 | 9,052.39 | 8,572.02 | 380.00 | 20.00 | 0.00 | 80.37 |
| | Service Charges*: | | | | | | | | |
| 11459 | FMCE-Office of Financial | 614-488-4616 | 074 | 3,213.30 | 0.00 | 1,606.65 | 1,606.65 | 0.00 | 0.00 |
| 11462 | Heartland Wildlife Inst | 419-352-2332 | 002 | 3,220.42 | 0.00 | 0.00 | 0.00 | 0.00 | 3,220.42 |
| | Service Charges*: | | | | | | | | |
| 11466 | Will-O-Wood | 740-593-6566 | 002 | 200.97 | 0.00 | 200.97 | 0.00 | 0.00 | 0.00 |
| 11470 | AA Lifestyle Magazine | 216-663-2700 | 002 | 27,764.27 | 0.00 | 0.00 | 0.00 | 0.00 | 27,764.27 |
| | Service Charges*: | | | | | | | | |
| 11507 | Inner Workings | 330-471-5740 | 007 | 2,212.51 | 0.00 | 0.00 | 1,504.02 | 708.49 | 0.00 |
| 11508 | Business Prtg America Inc | 859-272-7014 | 015 | 15,842.46 | 0.00 | 0.00 | 0.00 | 0.00 | 15,842.46 |
| | Service Charges*: | | | | | | | | |
| 11518 | Primary Packaging | 800-774-2247 | 003 | 260.92 | 260.92 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11578 | Ameriprint & Copy | | 008 | 2,582.51 | 0.00 | 0.00 | 0.00 | 0.00 | 2,582.51 |
| | Service Charges*: | | | | | | | | |
| 11585 | RAE Associates LTD | 614-579-9929 | 001 | 21,065.53 | 17,500.00 | 3,565.53 | 0.00 | 0.00 | 0.00 |
| 11609 | Square Foot Realty | 212-971-1414 | 007 | 195.54 | 195.54 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11615 | The Learning Post | 440-816-1370 | 003 | 10,927.03 | 0.00 | 0.00 | 0.00 | 0.00 | 10,927.03 |
| | Service Charges*: | | | | | | | | |
| 11625 | Mercy Tiffin Foundation | | 003 | 544.82 | 544.82 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11632 | Dunbar Pitcher | 440-243-4300 | 002 | 233.78 | 0.00 | 0.00 | 233.78 | 0.00 | 0.00 |
| 11656 | Polaris Printing/Graphics | 614-865-4000 | 015 | 600.88 | 0.00 | 0.00 | 0.00 | 0.00 | 600.88 |
| | Service Charges*: | | | | | | | | |
| 11672 | Buchanan Group | 317-626-6706 | 002 | 17,923.21 | 1,059.72 | 15,619.54 | 1,243.95 | 0.00 | 0.00 |
| 11673 | Gold Star Foods & Gifts | 800-648-9515 | 002 | 6,522.47 | 0.00 | 0.00 | 0.00 | 0.00 | 6,522.47 |
| | Service Charges*: | | | | | | | | |
| 11696 | Minuteman Press-P.Clinton | 419-732-6673 | 003 | 6.79 | 0.00 | 0.00 | 6.79 | 0.00 | 0.00 |
| 11708 | Luna Marketing, Inc. | 440-239-9970 | 074 | 26.36 | 0.00 | 0.00 | 26.36 | 0.00 | 0.00 |
| 11711 | Patriots-Unite Erie Co. | 419-826-1053 | 001 | 1,158.24 | 300.87 | 489.05 | 368.32 | 0.00 | 0.00 |
| 11713 | City of Columbus | 614-645-6508 | 007 | 2,444.15 | 2,444.15 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11721 | L & L Special Furnace Co. | 610-459-9210 | 074 | 387.32 | 0.00 | 387.32 | 0.00 | 0.00 | 0.00 |
| 11725 | Akron-Medina Vet. Hospit. | 330-239-1271 | 003 | 464.98 | 464.98 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11770 | First Fed Comm Bk NW | 419-492-2101 | 010 | 342.85 | 342.85 | 0.00 | 0.00 | 0.00 | 0.00 |
| 13422 | General Electric Lighting | 216-266-6661 | 007 | 9,822.25 | 9,822.25 | 0.00 | 0.00 | 0.00 | 0.00 |
| 14215 | Gochenour Meats | 419-492-2370 | 050 | 143.17 | 143.17 | 0.00 | 0.00 | 0.00 | 0.00 |
| 15460 | Henley Graphic | 419-994-5488 | 003 | 1,982.22 | 1,982.22 | 0.00 | 0.00 | 0.00 | 0.00 |
| 21062 | The Karcher Group | 330-493-6141 | 007 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | Total Unapplied Deposits: | | | -4,876.16 | | | | | |
| 24265 | Lorain-Medina Rural Elec | 800-222-5673 | 003 | 1,116.07 | 1,116.07 | 0.00 | 0.00 | 0.00 | 0.00 |
| 24750 | Luther Home Of Mercy | 419-836-7741 | 002 | 1,489.63 | 1,489.63 | 0.00 | 0.00 | 0.00 | 0.00 |
| 25005 | M L Advertising | 419-447-6523 | 002 | 464.31 | 0.00 | 0.00 | 0.00 | 85.94 | 378.37 |
| 25051 | Mansfield Brass & | 419-492-2154 | 001 | 207.26 | 207.26 | 0.00 | 0.00 | 0.00 | 0.00 |
| 25070 | Mark Advertising Agency | 419-626-0000 | 003 | 381.39 | 0.00 | 0.00 | 0.00 | 0.00 | 381.39 |
| | Service Charges*: | | | | | | | | |
| 25476 | Mercy Hospital of Willard | 419-933-2931 | 003 | 113.05 | 113.05 | 0.00 | 0.00 | 0.00 | 0.00 |
| 25705 | Miami University | 513-529-4330 | 007 | 2,515.48 | 0.00 | 2,515.48 | 0.00 | 0.00 | 0.00 |
| 26282 | Express Publish. & Print | 419-522-0800 | 003 | 3,618.89 | 3,618.89 | 0.00 | 0.00 | 0.00 | 0.00 |
| 26625 | Mt Union College | 330-821-5320 | 002 | 1,111.82 | 1,111.82 | 0.00 | 0.00 | 0.00 | 0.00 |
| 27380 | MTD-Willard Production | 419-935-6611 | 000 | 2,169.36 | 2,166.03 | 3.33 | 0.00 | 0.00 | 0.00 |
| 27505 | MTD/Cub Production | 330-225-7711 | 000 | 3,060.66 | 0.00 | 0.00 | 0.00 | 3,060.66 | 0.00 |
| 27511 | MTD/Cub Service | 330-273-8689 | 000 | 8,484.66 | 7,469.22 | 450.52 | 421.46 | 0.00 | 143.46 |
| | Service Charges*: | | | | | | | | |
| 29260 | North Central Electric | 800-426-3072 | 003 | 244.16 | 244.16 | 0.00 | 0.00 | 0.00 | 0.00 |
| 29290 | Norweco | 419-868-4471 | 003 | 2,802.80 | 2,802.80 | 0.00 | 0.00 | 0.00 | 0.00 |

AGED RECEIVABLE TRIAL BALANCE - SUMMARY

CAurand                              Monday, July 12, 2010                              TIME:    11:06

Statement / Cut-Off Date: 07/12/10

Aging Date: 07/12/10

| Cust Numb | Customer Name | Phone | Srep Num | Balance | Current | 1 - 30 Days | 31 - 60 Days | 61 - 90 Days | 91+ Days |
|---|---|---|---|---|---|---|---|---|---|
| 30885 | OSU Marion | 740-389-6786 | 002 | 0.00 | 0.00 | 0.00 | -1,298.05 | 1,298.05 | 0.00 |
| 32491 | Peter Li Education Group | 937-293-1415 | 007 | 1,928.81 | 1,928.81 | 0.00 | 0.00 | 0.00 | 0.00 |
| 33413 | ProVia Door | 330-852-4711 | 003 | 28,528.33 | 28,528.33 | 0.00 | 0.00 | 0.00 | 0.00 |
| 33417 | Preisser PIP Printing | 740-548-9778 | 015 | 1,266.15 | 611.00 | 655.15 | 0.00 | 0.00 | 0.00 |
| 33419 | Prestige Printed Products | 216-531-7333 | 074 | 124.17 | 0.00 | 124.17 | 0.00 | 0.00 | 0.00 |
| 33745 | Purebred Pub/Brown Swiss | 614-575-4620 | 002 | 4,557.87 | 0.00 | 4,557.87 | 0.00 | 0.00 | 0.00 |
| 33746 | Purebred Pub/Guernsey | 614-575-4620 | 002 | 1,861.33 | 1,861.33 | 0.00 | 0.00 | 0.00 | 0.00 |
| 33747 | Purebred Publishing Ayrsh | 614-575-4620 | 002 | 5,580.16 | 2,766.82 | 0.00 | 0.00 | 2,813.34 | 0.00 |
| 33748 | Purebred/Shorthorn | 614-575-4620 | 002 | 1,431.93 | 1,431.93 | 0.00 | 0.00 | 0.00 | 0.00 |
| 33770 | Purity Home Products | 614-542-9999 | 015 | 5,068.06 | 5,068.06 | 0.00 | 0.00 | 0.00 | 0.00 |
| 36225 | Rolls-Royce | 740-393-8551 | 015 | 387.52 | 36.80 | 30.80 | 65.20 | 28.56 | 224.16 |
|  | Service Charges*: |  |  |  |  |  |  |  |  |
| 36755 | Warren Rupp | 419-524-8388 | 002 | 9,745.26 | 2,354.05 | 911.92 | 3,194.82 | 2,729.35 | 555.12 |
|  | Service Charges*: |  |  |  |  |  |  |  |  |
| 37011 | Sabre Publishing | 440-243-8856 | 002 | 52,171.83 | 438.43 | 0.00 | 0.00 | 20,481.54 | 31,251.86 |
|  | Service Charges*: |  |  |  |  |  |  |  |  |
| 37640 | Shepherd Magazine | 419-492-2384 | 002 | 263.01 | 263.01 | 0.00 | 0.00 | 0.00 | 0.00 |
| 37890 | Skladany Business Service | 614-823-8883 | 015 | 5,504.87 | 4,662.24 | 842.63 | 0.00 | 0.00 | 0.00 |
| 38270 | Soprema | 330-334-0066 | 003 | 8,276.09 | 8,244.45 | 0.00 | 31.64 | 0.00 | 0.00 |
| 38603 | St. Bernard Church | 419-492-2295 | 050 | 256.76 | 256.76 | 0.00 | 0.00 | 0.00 | 0.00 |
| 38660 | Fay Stanfield | 419-935-1321 | 001 | 7,617.24 | 0.00 | 0.00 | 0.00 | 0.00 | 7,617.24 |
|  | Service Charges*: |  |  |  |  |  |  |  |  |
| 38670 | Stephens Publishing | 419-626-5592 | 003 | 92.71 | 0.00 | 0.00 | 0.00 | 0.00 | 92.71 |
|  | Service Charges*: |  |  |  |  |  |  |  |  |
| 38693 | Stump's Converting Inc | 419-492-2542 | 001 | 2,504.32 | 0.00 | 0.00 | 0.00 | 0.00 | 2,504.32 |
|  | Service Charges*: |  |  |  |  |  |  |  |  |
| 38720 | Suarez | 330-494-5504 | 003 | 3,926.21 | 1,732.22 | 2,193.99 | 0.00 | 0.00 | 0.00 |
| 39010 | Tattle Tale Port | 888-835-5668 | 015 | 1,370.63 | 0.00 | 0.00 | 0.00 | 1,370.63 | 0.00 |
|  | Service Charges*: |  |  |  |  |  |  |  |  |
| 40466 | True Sports | 614-793-4615 | 015 | 773.78 | 773.78 | 0.00 | 0.00 | 0.00 | 0.00 |
| 44630 | C E White Company | 419-492-2157 | 001 | 84.93 | 84.93 | 0.00 | 0.00 | 0.00 | 0.00 |
| 44725 | Wiers Farm Inc | 419-935-0131 | 003 | 717.86 | 717.86 | 0.00 | 0.00 | 0.00 | 0.00 |
| 45255 | Woodard Photographic | 800-589-6411 | 003 | 1,428.01 | 1,428.01 | 0.00 | 0.00 | 0.00 | 0.00 |
| 45472 | WQEL | 419-562-2222 | 002 | 2,301.97 | 0.00 | 0.00 | 0.00 | 2,301.97 | 0.00 |
| 47220 | Doyle Yoder Publishing | 330-674-2188 | 002 | 1,740.83 | 1,677.65 | 0.00 | 0.00 | 0.00 | 63.18 |
|  | Service Charges*: |  |  |  |  |  |  |  |  |
| 50760 | Spalding Laboratories | 408-929-9577 | 002 | 2,612.13 | 2,612.13 | 0.00 | 0.00 | 0.00 | 0.00 |
|  |  | Grand Total Debits: |  | 974,983.51 | 222,956.52 | 133,673.97 | 58,785.05 | 43,645.80 | 515,922.17 |
|  |  | Grand Total Credits: |  | -144,742.17 | -2,109.27 | -60,925.39 | -12,567.38 | -5,436.60 | -63,703.53 |
|  |  | Grand Net Totals: |  | -830,241.34 | 220,847.25 | 72,748.58 | 46,217.67 | 38,209.20 | 452,218.64 |
|  |  | Grand Percentages of Net Total: |  |  | 26.60 | 8.76 | 5.57 | 4.60 | 54.47 |
|  |  | Grand Total of Service Charges*: |  | 50,144.82 |  |  |  |  |  |
|  |  | Grand Total of Unapplied Deposits: |  | -5,064.78 |  |  |  |  |  |

TOTAL Number of Customers Processed: 138

Customer Range: All

SalesRep Range: All

Group By Currency: No

Sort By: Customer Number

Aging By: Due Date

A/R Terms: No

Include History Records: Yes

Job/Order Code 2: All

* Service Charges are included in Net Totals.

Herald Printing Co., Inc.

MULTIPLE KIND VALUATION - ENDING BALANCE

CAurand

Monday, July 12, 2010

| Quantity On Order | Quantity On Hand | Quantity Unpriced | Quantity Available | Quantity Reserved | Item Number | Item Description | Average Price | Item Valuation | Quantity YTD Usage |
|---|---|---|---|---|---|---|---|---|---|
| 0 | 500 | 0 | 500 | 0 | 801011001200 | Coronado Supersmooth Offset 80# 23 x 35 136M Inf. White | 0.16985 | 84.92 | 0 |
| 0 | 675 | 0 | 675 | 0 | 801011103100 | Cougar Opaque Smooth Offset 70# 23 x 35 119M White | 0.10948 | 73.90 | 0 |
| 0 | 400 | 0 | 400 | 0 | 801011302550 | Exact Opaque Vellum Offset 50# 23 x 35 85M Cream | 0.5271 | 210.84 | 0 |
| 800 | 2,200 | 0 | -2,135 | 4,335 | 801011302850 | Exact Opaque Vellum Offset 50# 23 x 35 85M Yellow | 0.0630 | 138.60 | 0 |
| 0 | 1,500 | 0 | 1,500 | 0 | 801011304600 | Exact Opaque Vellum Offset 60# 25 x 38 120M Cream | 0.0888 | 133.20 | 0 |
| 0 | 400 | 0 | 400 | 0 | 801011400400 | Finch Fine VHF Offset 70# 25 x 38 140M Bright White | .20000 | 80.00 | 0 |
| 0 | 900 | 0 | 900 | 0 | 801013502000 | Domtar Titanium Smooth Offset 70# 25 x 38 140M Natural | .20000 | 180.00 | 0 |
| 24,500 | 1,500 | 18,750 | -55,997 | 57,497 | 801014800650 | Husky Smooth Offset 60# 23 x 35 102M White | 0.06120 | 91.80 | 11,315 |
| 0 | 6,000 | 0 | -143,862 | 149,862 | 801014800700 | Husky Smooth Offset 60# 25 x 38 120M White | 0.07184 | 431.04 | 0 |
| 0 | 4,000 | 0 | 4,000 | 0 | 801014800750 | Husky Smooth Offset 80# 28 x 40 142M White | 0.08307 | 332.28 | 0 |
| 21,500 | 500 | 25,500 | -105,196 | 105,696 | 801014801100 | Husky Smooth Offset 70# 23 x 35 119M White | .07095 | 35.48 | 30,725 |
| 0 | 250 | 1,000 | -1,745 | 1,995 | 801015852150 | Whitehall Vellum Reply Card 75# 25 x 38 150M White | 0.10275 | 25.69 | 0 |
| 100,000 | 45,000 | 0 | 45,000 | 0 | 801019002050 | Xerox Smooth Offset 50# 11 x 17 20M White | 0.01269 | 571.05 | 47,983 |
| 0 | 1,100 | 0 | 1,100 | 0 | 801035405300 | Nitecoat Matte Text 80# 23 x 35 136M Cream | 0.1302 | 143.22 | 0 |
| 0 | 200 | 0 | 200 | 0 | 801036602600 | Porcelain Silk Coated Offset 100# 23 x 35 169M White | 0.1166 | 23.32 | 0 |
| 0 | 1,100 | 0 | 1,100 | 0 | 801038403700 | Somerset Matte Coated Offset 80# 23 x 35 136M White | 0.0942 | 103.62 | 0 |
| 21,250 | 4,200 | 101,750 | -54,535 | 58,735 | 801039100250 | Value Gloss Coated Offset 60# 24 x 36 110M White | 0.06226 | 261.49 | 111,550 |
| 7,500 | 10,000 | 16,850 | -1,838 | 11,838 | 801039101300 | Value Gloss Coated Offset 80# 28 x 40 189M White | 0.10017 | 1,001.70 | 23,900 |
| 11,250 | 1,000 | 10,300 | -1,974 | 2,974 | 801039101600 | Value Gloss Coated Offset 100# 24 x 36 182M White | 0.10400 | 104.00 | 54,762 |
| 4,500 | 656 | 9,500 | -2,044 | 2,700 | 801039101650 | Value Gloss Coated Offset 100# 25 x 38 200M White | 0.12000 | 78.72 | 13,834 |
| 0 | 750 | 30,400 | 750 | 0 | 801039101700 | Value Gloss Coated Offset 100# 28 x 40 236M White | 0.14180 | 106.20 | 32,750 |
| 32,000 | 3,000 | 4,000 | 3,000 | 0 | 801039102000 | Value Silk Coated Offset 60# 23 x 35 102M White | .07140 | 214.20 | 50 |
| 3,500 | 11,000 | 500 | -35,942 | 46,942 | 801039102150 | Value Silk Coated Offset 70# 23 x 35 119M White | 0.06426 | 706.86 | 0 |
| 500 | 9,000 | 4,450 | 7,374 | 1,626 | 801039102200 | Value Silk Coated Offset 70# 24 x 36 127M White | 0.07493 | 674.37 | 43,000 |
| 8,500 | 1,250 | 21,400 | 1,250 | 0 | 801039102500 | Value Silk Coated Offset 80# 25 x 38 160M White | 0.08831 | 110.39 | 3,750 |
| 0 | 1,250 | 21,250 | 1,250 | 0 | 801039102700 | Value Silk Coated Offset 100# 23 x 35 169M White | 0.1082 | 135.25 | 21,250 |
| 0 | 850 | 0 | 850 | 0 | 801039102800 | Value Silk Coated Offset 100# 24 x 36 182M White | 0.10203 | 86.73 | 12,000 |
| 0 | 750 | 0 | 750 | 0 | 801061250800 | Chorus Art Gloss Cover 80# 26 x 40 320M White | 0.23880 | 177.60 | 0 |
| 0 | 150 | 1,000 | 150 | 0 | 801063900400 | Kromekote Coated Cover 8 pt CC1S 20 x 26 136M White | 0.24137 | 36.21 | 0 |

| Quantity On Order | Quantity On Hand | Quantity Unpriced | Quantity Available | Quantity Reserved | Item Number | Item Description | Average Price | Item Valuation | Quantity YTD Usage |
|---|---|---|---|---|---|---|---|---|---|
| 0 | 400 | 175 | 400 | 0 | 801083901700 | Kromekote Coated Cover 10 pt CC1S 20 x 26 162M White | 0.2863 | 114.52 | 0 |
| 0 | 350 | 750 | 350 | 0 | 801068300750 | Somerset Matte Coated Cover 9 pt 23 x 35 274M White | 0.3596 | 125.86 | 0 |
| 0 | 250 | 0 | 250 | 0 | 801068930250 | Tango Coated Cover 8 pt C1S 25 x 38 246M White | 0.21814 | 54.54 | 7,000 |
| 0 | 1,400 | 9,250 | -653 | 2,053 | 801068930450 | Tango Coated Cover 10 pt C1S 20 x 26 149M White | .09610 | 134.54 | 2,478 |
| 2,000 | 1,000 | 6,000 | -85 | 1,085 | 801068930950 | Tango Coated Cover 12 pt C1S 25 x 38 319M White | 0.2230 | 223.00 | 1,000 |
| 0 | 75 | 0 | -197 | 272 | 801068931050 | Tango Coated Cover 12 pt C1S 28 x 40 376M White | 0.31400 | 23.55 | 0 |
| 0 | 150 | 4,350 | 150 | 0 | 801068931350 | Tango Coated Cover 15 pt C1S 28 x 40 414M White | 0.2950 | 44.25 | 0 |
| 0 | 100 | 200 | 100 | 0 | 801068931850 | Tango Coated Cover 24 pt C1S 20 x 26 301M White | 0.2167 | 21.67 | 200 |
| 0 | 300 | 2,100 | 300 | 0 | 801068931950 | Tango Coated Cover 24 pt C1S 23 x 35 466M White | .33550 | 100.65 | 0 |
| 0 | 100 | 950 | 14 | 86 | 801068932200 | Tango Coated Cover 8 pt C2S 20 x 26 144M White | 0.13460 | 13.46 | 100 |
| 1,100 | 1,800 | 0 | -4,895 | 6,695 | 801068932650 | Tango Coated Cover 10 pt C2S 20 x 26 173M White | 0.1514 | 272.52 | 94 |
| 0 | 300 | 0 | 300 | 0 | 801068933325 | Tango Coated Cover 14 pt. C2S 28 x 40 487M White | 0.44561 | 133.68 | 1,800 |
| 0 | 1,100 | 0 | 1,100 | 0 | 801068933650 | Tango Coated Cover 18 pt C2S 25 x 38 484M White | 0.4235 | 465.85 | 0 |
| 0 | 1,200 | 15,350 | -10,243 | 11,443 | 801068990100 | Value Gloss Coated Cover 80# 20 x 26 160M White | 0.09920 | 119.04 | 26,235 |
| 10,250 | 2,200 | 23,100 | 2,200 | 0 | 801068990200 | Value Gloss Coated Cover 80# 25 x 38 292M White | 0.16758 | 368.68 | 41,650 |
| 0 | 300 | 750 | -5,761 | 6,061 | 801068990500 | Value Gloss Coated Cover 100# 20 x 26 200M White | 0.12157 | 36.47 | 5,826 |
| 0 | 1,000 | 0 | 1,000 | 0 | 801068990650 | Value Gloss Coated Cover 100# 26 x 40 400M White | 0.24400 | 244.00 | 2,000 |
| 0 | 500 | 0 | 500 | 0 | 801068990800 | Value Gloss Coated Cover 130# 26 x 40 520M White | 0.32240 | 161.20 | 0 |
| 8,500 | 500 | 5,800 | -2,570 | 3,070 | 801068991075 | Value Silk Coated Cover 80# 25 x 38 292M White | 0.16352 | 81.76 | 22,000 |
| 0 | 1,800 | 0 | 1,800 | 0 | 801068992150 | Value Silk Coated Cover 100# 26 x 40 400M White | 0.24800 | 446.40 | 350 |
| 0 | 1,100 | 790 | -328 | 1,428 | 801090302200 | Astrobrights Vellum Cover 65# 35 x 23 201M Rocket Red | 0.28500 | 313.50 | 525 |
| 0 | 200 | 0 | 200 | 0 | 801090801250 | Beckett Ridge Uncoated Cover 80# 26 x 40 320M Greenbrier | .79872 | 159.74 | 0 |
| 0 | 250 | 0 | 250 | 0 | 801092750550 | Crushed Leaf Smooth Cover 80# 26 x 40 320M Silver | .40000 | 100.00 | 0 |
| 0 | 500 | 0 | 500 | 0 | 801092800200 | Sundance Felt Cover 80# 26 x 40 320M Adobe Tan | .40000 | 200.00 | 0 |
| 0 | 400 | 0 | 400 | 0 | 801092801000 | Sundance Smooth Cover 80# 23 x 35 248M Honey | .40000 | 160.00 | 27 |
| 0 | 150 | 0 | 150 | 0 | 801093352250 | Element Squares Cover 80# 25.5 x 38 298M Soft Blue | 0.682 | 102.30 | 0 |
| 0 | 200 | 0 | 200 | 0 | 801093503875 | Environment Smooth Cover 120# 26 x 40 480M UltBrite Whi | 1.18745 | 237.49 | 0 |

MULTIPLE KIND VALUATION - ENDING BALANCE

CAurand       Monday, July 12, 2010       TIME:   11:08

| Quantity On Order | Quantity On Hand | Quantity Unpriced | Quantity Available | Quantity Reserved | Item Number | Item Description | Average Price | Item Valuation | Quantity YTD Usage |
|---|---|---|---|---|---|---|---|---|---|
| 0 | 250 | 6,500 | 250 | 0 | 801094001250 | Exact Vellum Uncoated Cover 65# 23 x 35 201M Cream | 0.1548 | 38.70 | 6,250 |
| 0 | 400 | 0 | 400 | 0 | 801095101250 | Howard Linen Cover 80# 26 x 40 320M White | .40000 | 160.00 | 0 |
| 0 | 100 | 100 | 100 | 0 | 801095551000 | Curious Metallics Cover 92# 26 x 40 370M Venom | 0.00 | 0.00 | 0 |
| 0 | 450 | 0 | 450 | 0 | 801095961500 | Options Smooth Cover PC100 100# 23 x 35 310M White | 0.6014 | 270.63 | 0 |
| 0 | 250 | 0 | 250 | 0 | 801096403400 | Passport Felt Uncoated Cover 80# 26 x 40 320M Juniper | .55940 | 139.85 | 0 |
| 0 | 50 | 0 | 50 | 0 | 801097206300 | Royal Fiber Smooth Cover 80# 35 x 23 248M Birch | .40000 | 20.00 | 0 |
| 0 | 200 | 0 | 200 | 0 | 801097352500 | Speckletone Smooth Cover 100# 26 x 40 400M Kraft | 0.8120 | 162.40 | 0 |
| 0 | 125 | 0 | -1,705 | 1,830 | 801097370100 | Starbrite Smooth Cover 65# 23 x 35 201M White | 0.1504 | 18.80 | 0 |
| 0 | 700 | 0 | 700 | 0 | 801097370125 | Starbrite Smooth Cover 65# 25 x 38 238M White | 0.17126 | 119.88 | 0 |
| 0 | 384 | 500 | 312 | 72 | 801097400950 | Starwhite Smooth Cover 80# 23 x 35 248M Tiara | 0.48500 | 186.24 | 157 |
| 0 | 250 | 0 | 250 | 0 | 801097700100 | ESSE Texture Cover 80# 26 x 40 320M Black | .40000 | 100.00 | 0 |
| 0 | 150 | 0 | 150 | 0 | 801098100100 | Synergy Felt Cover 80# 35 x 23 248M Natural | .40000 | 60.00 | 0 |
| 0 | 150 | 0 | 150 | 0 | 801098901750 | Synergy Felt Cover 130# 26 x 40 Fiery Red | .40000 | 60.00 | 0 |
| 0 | 500 | 0 | 500 | 0 | 801099000100 | Speckletone Vellum Cover 80# 26 x 40 320M Madero Beach | .40000 | 200.00 | 0 |
| 0 | 1,000 | 0 | 1,000 | 0 | 801099000500 | Medallion Felt Cover 80# 23 x 35 248M White | .40000 | 400.00 | 0 |
| 0 | 2,000 | 3,250 | 2,000 | 0 | 801120400520 | Capitol Lt Cockle Bond 24# 35 x 22.5 101M White | 0.1776 | 355.20 | 0 |
| 0 | 1,300 | 1,750 | 1,300 | 0 | 801120900150 | Classic Crest Smooth Writing 24# 35 x 23 101M AvonBrilliant | 0.2117 | 275.21 | 0 |
| 0 | 200 | 800 | 200 | 0 | 801120900950 | Classic Crest Smooth Writing 24# 35 x 23 103M Whitestone | 0.224 | 44.80 | 0 |
| 0 | 30,000 | 0 | 30,000 | 0 | 801125100100 | Hammermill Uncoated Offset 24# 11 x 17 24M Ivory | 0.02248 | 674.40 | 0 |
| 0 | 2,500 | 0 | 2,500 | 0 | 801129407500 | Strathmore Script Writing 24# 35 x 22.5 Bri White Pinstr | .20000 | 500.00 | 0 |
| 0 | 800 | 0 | 800 | 0 | 801129700150 | Via Laid Writing 24# 35 x 23 102M Brt.White | .16080 | 128.48 | 0 |
| 0 | 965 | 1,000 | 965 | 0 | 801212000250 | Exact Smooth Index 90# 22.5 x 35 182M White | 0.13875 | 133.89 | 1,342 |
| 50 | 300 | 550 | -427 | 727 | 801212003750 | Exact Smooth Index 110# 22.5 x 35 223M Canary | 0.23200 | 69.60 | 0 |
| 0 | 225 | 0 | 36 | 189 | 801247001150 | Springhill Smooth Tag 125# 24 x 36 250M Manila | 0.18698 | 42.07 | 0 |
| 0 | 150 | 0 | -253 | 403 | 801274000550 | Maclac Starliner Perm. 60# 27 x 20 Spotlite II Silver | 2.06753 | 310.13 | 0 |
| 0 | 100 | 0 | 100 | 0 | 801331200650 | Astroparche Vellum Text 60# 23 x 35 102M Natural | 0.1938 | 19.38 | 0 |
| 0 | 650 | 0 | 650 | 0 | 801331200750 | Astroparche Vellum Text 60# 25 x 38 120M Natural | 0.194 | 126.10 | 0 |
| 0 | 300 | 0 | 300 | 0 | 801332400050 | Cambric Linen Text 70# 23 x 35 119M Arctic | .20000 | 60.00 | 0 |
| 0 | 300 | 0 | 300 | 0 | 801333101750 | Classic Crest Smooth Text 80# 23 x 35 136M Pebblestone | .20000 | 60.00 | 0 |
| 0 | 700 | 0 | 700 | 0 | 801333400150 | Crused Leaf Smooth Text 70# 23 x 35 119M Gray | 0.185 | 129.50 | 0 |

| Quantity On Order | Quantity On Hand | Quantity Unpriced | Quantity Available | Quantity Reserved | Item Number | Item Description | Average Price | Item Valuation | Quantity YTD Usage |
|---|---|---|---|---|---|---|---|---|---|
| 0 | 7,500 | 0 | 7,500 | 0 | 801334400350 | Gainsborough Felt Text 80# 23 x 35 138M Silver | 0.3421 | 2,565.75 | 0 |
| 0 | 600 | 0 | 600 | 0 | 801335000500 | Mohawk Vellum Text 100# 25 x 38 200M Cool White | .20000 | 120.00 | 0 |
| 0 | 800 | 0 | 800 | 0 | 801335001000 | Parchtone Smooth Text 60# 25 x 38 120M White | 0.2342 | 187.36 | 0 |
| 0 | 1,250 | 0 | 1,250 | 0 | 801335100500 | Smart Text 100# 19 x 25 100M White | .20000 | 250.00 | 0 |
| 0 | 200 | 0 | 200 | 0 | 801335605550 | Royal Linen Text 70# 23 x 35 119M Natural | 0.18625 | 37.25 | 0 |
| 0 | 750 | 0 | 750 | 0 | 801339600100 | Adorra Felt Text 80# 23.5 x 35 136M Pearl | .20000 | 150.00 | 0 |
| 0 | 490 | 1,000 | 490 | 0 | 801365000125 | NCR CF Manila Tag 105# 22.7M 8.5 x 11 | 0.0820 | 40.18 | 510 |
| 0 | 250 | 0 | 250 | 0 | 801365000150 | NCR CF White Tag 105# 22.7M 8.5 x 11 | 0.09465 | 23.66 | 0 |
| 2,000 | 490 | 3,500 | 490 | 0 | 801365600050 | NCR 8.5 x 11 White CB | 0.0799 | 39.15 | 1,010 |
| 0 | 750 | 0 | 750 | 0 | 801365800110 | NCR 8.5 x 11 Blue CB | 0.0374 | 28.05 | 0 |
| 2,000 | 1,000 | 3,000 | 1,000 | 0 | 801365800150 | NCR 8.5 x 11 canary cfb | 0.0734 | 73.40 | 500 |
| 0 | 5,500 | 0 | 5,500 | 0 | 801366000100 | NCR 8.5 x 11 Blue CF | 0.0295 | 162.25 | 0 |
| 0 | 1,500 | 500 | 1,500 | 0 | 801366000300 | NCR 8.5 x 11 Pink cf | 0.02317 | 34.76 | 0 |
| 0 | 300 | 5,500 | 300 | 0 | 801366200100 | NCR Rev 17.5 x 22.5 precol 3 part | 0.1209 | 36.27 | 1,330 |
| 10,500 | 480 | 0 | -4,970 | 5,450 | 801366600050 | NCR Rev 8.5 x 11 precol 2 part | 0.03400 | 16.32 | 4,709 |
| 0 | 4,500 | 0 | -17,730 | 22,230 | 801366600100 | NCR Rev 8.5 x 11 Precol 3 part | 0.03576 | 160.92 | 3,030 |
| 0 | 324 | 0 | 324 | 0 | 801421000400 | Chipboard .026  26 x 38 White 80# | 5.28994 | 1,713.94 | 0 |
| 0 | 450 | 0 | 450 | 0 | 801510000100 | Sedona Cover 17 pt. 26.5 x 35 508M Navy | 2.7338 | 1,230.21 | 0 |
| 0 | 700 | 0 | 700 | 0 | 801511500350 | Polyart 75# 23 x 35  5.5 PT White | .50800 | 355.60 | 0 |
| 0 | 1,000 | 0 | 1,000 | 0 | 801511500550 | Polyart 95# 25 x 38 7 PT White | .71645 | 716.45 | 0 |
| 200 | 3,000 | 3,000 | 3,000 | 0 | 801513000500 | EC Tags #7 Manila | 0.0241 | 72.30 | 0 |
| 0 | 3,200 | 3,200 | -410 | 3,610 | 801513300350 | EC Tags 15 pt #8 Yellow | 0.0429 | 137.28 | 0 |
| 0 | 3,300 | 3,300 | 2,070 | 1,230 | 801513300400 | EC Tags 15 pt #8 Red | 0.0434 | 143.22 | 0 |
| 0 | 1,000 | 0 | 1,000 | 0 | 801513320100 | EC Tags 13pt. #8 Manila | 0.04741 | 47.41 | 0 |
| 0 | 7,150 | 0 | 7,150 | 0 | 80151500595 | Polyart 95# 19 x 25 7 pt. | 0.3582250 | 2,561.31 | 0 |
| 0 | 36 | 0 | 36 | 0 | 801518000010 | Tag Wire 26 12 Inch | 7.5000 | 270.00 | 0 |
| 0 | 500 | 0 | 500 | 0 | 801519000150 | Vegetable Parchment Offset 39# 25 x 38 78M White | 0.1141 | 57.05 | 0 |
| 0 | 800 | 0 | 734 | 66 | 801519000475 | Clear Cling Vinyl 8 Mil 18 x 24 330M Clear | 0.8590 | 687.20 | 0 |
| 0 | 500 | 0 | 500 | 0 | 801519000700 | Low Tac White Vinyl 4 mil. 27 x 20 0 -Split | 1.1740 | 587.00 | 0 |
| 0 | 200 | 250 | 200 | 0 | 801519100100 | Styrene Matte/Matte std. opq. 10 pt. 28 x 40 422M White | 1.16444 | 232.89 | 0 |
| 0 | 968 | 0 | 968 | 0 | 802010006000 | RS Windsor Offset 50# 26" | .45000 | 435.60 | 0 |
| 0 | 35,765 | 0 | 35,765 | 0 | 802010552500 | RS Windsor Offset 50# 35" | 0.4500 | 16,094.25 | 0 |
| 0 | 450 | 0 | 450 | 0 | 802010601000 | RS Abitibi Alt Offset 35# 35" Vellum | 0.46 | 207.00 | 0 |

| Quantity On Order | Quantity On Hand | Quantity Unpriced | Quantity Available | Quantity Reserved | Item Number | Item Description | Average Price | Item Valuation | Quantity YTD Usage |
|---|---|---|---|---|---|---|---|---|---|
| 8,523 | 17,086 | 0 | 17,086 | 0 | 802011001500 | RS Metroopaque Smooth Offset 50# 35" White | 0.63500 | 10,849.61 | 15,459 |
| 0 | 12,554 | 12,554 | 12,554 | 0 | 802011005000 | RS Lynx Opaque 70# 35" | 0.0000 | 0.00 | 0 |
| 0 | 806 | 0 | 806 | 0 | 802011750100 | RS Premium Newsprint 35# 17.5" | 0.4100 | 330.46 | 0 |
| 0 | 8,887 | 0 | 8,887 | 0 | 802030001000 | RS Unisource Gloss Text 40# 30.125" | 0.4800 | 4,265.76 | 0 |
| 0 | 297 | 0 | 297 | 0 | 802030004750 | RS Orion Satin Text 70# 35" | 0.50 | 148.50 | 0 |
| 0 | 1,474 | 0 | 1,474 | 0 | 802030008000 | RS Orion Gloss Text 50# 26.5" | 0.65 | 958.10 | 0 |
| 0 | 1,344 | 0 | 1,344 | 0 | 802030200000 | RS Niagra Gloss Text 45# 17.5 White | 0.5 | 672.00 | 0 |
| 0 | 249 | 0 | 249 | 0 | 802030620000 | RS Somerset Satin 60# 17.5" | 0.5 | 124.50 | 0 |
| 0 | 942 | 0 | 942 | 0 | 802031001000 | RS Consogloss Text 45# 35" | 0.5 | 471.00 | 0 |
| 0 | 2,586 | 0 | 2,586 | 0 | 802031001025 | RS Satin Matte Text 45# 35" | 0.2002 | 517.72 | 0 |
| 0 | 14,000 | 0 | 14,000 | 0 | 8051 | 10 X 13 QP Catalog 28# WW White | .04050 | 567.00 | 0 |
| 0 | 25,000 | 0 | 25,000 | 0 | 80510 | 6 3/4 QP Regular 24# WW White | .01195 | 298.75 | 0 |
| 0 | 3,000 | 0 | 3,000 | 0 | 80512 | 6 X 9 QP Booklet 24# WW White | 0.0199 | 59.70 | 0 |
| 0 | 7,000 | 5,000 | 7,000 | 0 | 80516 | 9 X 12 QP Booklet 24# WW White | .03610 | 252.70 | 0 |
| 0 | 5,000 | 0 | 5,000 | 0 | 80519 | 9 X 12 QP Catalog 24# WW White | .03600 | 180.00 | 0 |
| 0 | 52,500 | 0 | 52,500 | 0 | 8052 | #10 QP Recycled Business White | 0.01990 | 1,044.75 | 0 |
| 0 | 24,000 | 12,000 | 24,000 | 0 | 80525 | 6 3/4 QP Remittance #24 WW White | 0.02354 | 564.96 | 10,500 |
| 0 | 1,500 | 0 | 1,500 | 0 | 80529 | 9 X 12 RIS Catalog Pel Sel 28# White Peal & Seal | 0.0753 | 112.95 | 0 |
| 0 | 50,000 | 12,500 | 50,000 | 0 | 8053 | #9 QP Regular 24# WW White | .01150 | 575.00 | 0 |
| 0 | 1,000 | 0 | 1,000 | 0 | 80535 | #9 RIS Remit 24# WW White | 0.0358 | 35.80 | 0 |
| 0 | 70,000 | 0 | 70,000 | 0 | 80538 | 3 3/4 X 7 JBM Drive In 24# WW White Plnk Env. | .01840 | 1,148.00 | 0 |
| 0 | 114,000 | 257,500 | 114,000 | 0 | 8054 | #10 QP Regular 24# WW White | 0.01282 | 1,461.48 | 204,500 |
| 0 | 500 | 500 | 500 | 0 | 80543 | #4 Baronial RIS StarWhite 70# StarWhite Tiara Velum | 0.0480 | 23.00 | 0 |
| 0 | 1,500 | 0 | 1,500 | 0 | 80544 | #10 RIS Hammermill Bond 24# White | 0.0429 | 64.35 | 0 |
| 0 | 2,000 | 2,500 | 2,000 | 0 | 80548 | #10 Classic Crest 24# WW White | 0.00 | 0.00 | 2,500 |
| 1,000 | 1,000 | 1,000 | 1,000 | 0 | 80549 | 6 X 9 RIS Tyvek PeelSeal 14# White 1st Class Catalog | 0.00 | 0.00 | 0 |
| 0 | 1,500 | 0 | 1,500 | 0 | 8055 | 9 X 12 QP Booklet 28# WW White | 0.037 | 55.50 | 0 |
| 0 | 8,500 | 10,000 | 8,500 | 0 | 80550 | 6 x 9 Smet Booklet 24# White | 0.00 | 0.00 | 0 |
| 0 | 500 | 500 | 500 | 0 | 80551 | A-2 RIS Starwhite 70# TV White Tiara Vellum | 0.00 | 0.00 | 0 |

| Quantity On Order | Quantity On Hand | Quantity Unpriced | Quantity Available | Quantity Reserved | Item Number | Item Description | Average Price | Item Valuation | Quantity YTD Usage |
|---|---|---|---|---|---|---|---|---|---|
| 0 | 400 | 1,500 | 400 | 0 | 80552 | #10 Rib Regular Tinted 24# WW White | 0.00 | 0.00 | 1,100 |
| 0 | 5,250 | 5,250 | 5,250 | 0 | 80553 | A-2 Rib Cougar 60# White Smooth | 0.00 | 0.00 | 0 |
| 2,500 | 22,500 | 42,500 | 22,500 | 0 | 8057 | #10 QP Window 24# WW White | 0.01586 | 356.85 | 5,000 |
| 12 | 3 | 0 | 3 | 0 | 90390 | Pressroom Supplies | 548.07667 | 1,644.23 | 0 |

TOTAL Items Processed: 152

| | |
|---|---|
| TOTAL Qty On Order: | 284,435 |
| TOTAL Qty On Hand: | 715,736 |
| TOTAL Qty Unpriced: | 737,219 |
| TOTAL Qty Available: | 203,536 |
| TOTAL Qty Reserved: | 512,200 |
| TOTAL Stock Value: | 0.00 |
| TOTAL Other Value: | 71,933.31 |
| TOTAL Material Value: | 71,933.31 |

| | |
|---|---|
| Item Number Range: | ALL |
| Item Name Range: | ALL |
| Type Code Range: | ALL |
| Sort By: | Item Number |
| Price By: | Average Price |
| Skip On-Hand = 0: | Yes |
| Kinds Selected: | ALL |

| | Total | | | |
|---|---|---|---|---|
| PC and Macs | 68/14 | 68x400=27200 | 14x800=11200 | 38400 |
| Servers | 12 | 12x1000=12000 | | 12000 |
| Monitors | 85 | 75x75=5625 | 10x200=2000 | 7625 |
| Printers | 24 | 24x150=3600 | | 3600 |
| Phones | 53 | 53x50=2650 | | 2650 |
| Desk | 45 | | | |
| Chairs | 91 | | | |
| Cubicals | 36 | | | |
| Binder/Cabinets | 146 | | | |
| Switches | 5 | 5x500=2500 | | 2500 |
| Fax Machines | 5 | 5x150=750 | | 750 |
| Conference Table | 2 | | | |
| Conference Chairs | 14 | | | |
| Couch/Chair | 2 | | | |
| Lobby Cabinets | 7 | | | |
| TV/VCR | 2 | | | |
| Radio | 1 | | | |
| Wooden Shelves | 15 | | | |
| Paper Shredder | 1 | | | |
| Wooden Tables in Prepess | 10 | | | |
| Drum Scanner | 1 | | | |
| Light Board | 1 | | | |
| Plate Punch | 1 | | | |
| Phone Cabinet | 1 | 1x500=500 | | 500 |
| Amplifiers | 4 | | | |
| Server Rack | 4 | | | |
| Floor Air Conditioners | 3 | | | |
| Kitchenettes | 2 | | | 68025 |
| Epson 9000 Proofer | | | | |
| HP 5000 Double Proofer | | | | |

**Presses:**

| | | | |
|---|---|---|---|
| Miehle-Man Roland | 40" | 4clr. | 15663B6631 |
| Miehle-Man Roland | 40" | 6clr. | 1674 1B6758 |
| Miehle-Man Roland | 40" | 2clr. | 11784B6139 |
| Roland | | 40" | 6clr plus col 25119B |
| Miller | Perfector | 40" | 6clr TP104 A20445 |
| Web | | MGD | Miehle-Goss-Dexter |
| Ryobi | 2 Color | | |
| Miscellaneous Press Parts | | | |

**Letterpress:**

Miller 21x28
Miehle Verticle Press
Flatbed Press
C&P Press
Existing Dies / materials

**Folders:**

| | | | | |
|---|---|---|---|---|
| MBO 1 | B-26-S-C | Main Machine | S03/124 | |
| MBO 1 | B-26-S-2-26-4 | 8pg unit | S03/124 | |
| MBO 1 | B-26-S-3-22-4 | 16pg unit | S03/124 | |
| MBO 1 | ASP 66-2ME | crusher de | 80615 | |
| MBO 3 | B26-S-C | Main Machine | S03/131 | |
| MBO 3 | B26-S-2-26-4 | 8pg unit | S03/131 | |
| MBO 3 | B26-S-3-22-4 | 16pg unit | S03/131 | |
| MBO 3 | ASP-66-2ME | crusher de | 80617 | |
| MBO 2 | B26-C | Main Machine | E08/02 | |
| MBO 2 | B26-2-26-4 | 8pg unit | E08/02 | |

| Machine | Code | Unit | Number | |
|---|---|---|---|---|
| MBO 2 | B26-3-15-4 | 16pg unit | M06/46 | |
| MBO 2 | A76-DC | Delivery | E09/33 | |
| MBO 4 | T-49-44 | Main Machine | B-07-22 | |
| MBO 4 | T-49-44 | 8pg unit | B-07-22 | |
| MBO 4 | A-56 | 8pg unit | 62365 | |
| MBO 4 | T49-C | Delivery | F1/27 | |
| MBO 5 | T49-2-49/4 | Main Machine | | |
| MBO 5 | A49-DC | 8pg unit | F1/27 | |
| MBO 5 | T-49-2-49/4 | Delivery | J-08/15 | |
| MBO 5 | Z2 | GLUE UNIT | K.01/11 | |
| MBO | | Z-Knife | | |
| Central | CP322U | Tape System | 961366 | 8027 |

Shrink wrapper:

| | | | | |
|---|---|---|---|---|
| Voneiff Gibson | | | | |
| Voneiff | 8 Ft Lug | 3000-1 Ba | 112702 | |
| Voneiff | | T1000 Oven | 112701 | 112703 |

| | | | |
|---|---|---|---|
| Pocket folder | | Pocket folder | 878 |
| Moll | | Bump & Turn | 465 |
| Moll | | Final Fold | 496 |
| Moll | | Dial a Stack | 510 |
| Moll | | Perf & Crease | 483 |
| Moll | | Glu- Bind | 431 |

Saddlebinders

| | | | |
|---|---|---|---|
| Harris | 562-8 | 8 gather | 717G |
| McCain | 6 gather | | MTA16120488 |

Weld-O-Tron Shrink Tunn
Weld-O-Tron Shrink Unit

Cutters
Wohlenburg                                    Type 115          3256-006
Wohlenburg                                    Type 115          3727-006
Heinrich Bauman          Pile Lift                      51533
Heinrich                                      Jogger Table      211.554
Heinrich                                      Stacker BA3N      1246
CP322U Taping System
Z2Knife

Miscellaneous Bindery Parts

Quincy                          5120 Air Compressor              6051666
Quincy                          5120 Air Compressor              6153509
Dayton                          Air Dryer
Hankison          Air Dryer                                      0321A-31-8909-172N

Polybagger    Weldotron 3 Station Feeder
Multibinder  Macey
Skid Wrapper Muller
WinkJet & Tabber
2 Mosca Strapers
Web Press Chiller Unit

(10) Handtrucks
(3) Hoists

Pile Turner Unit
Paper Baler Unit
Battery Charger Unit

1993 International 27' Box Truck
2003 Chevrolet 3500 Van
2001 Chevrolet 3500 Van
2005 Chevrolet 3500 Van
2002 Chevrolet 3500 Van
1999 Chevrolet 3500 Van
1997 GEO Tracker
2004 Trailer single axle
(2) 40' semi trailer/storage

Press Supplies:
ALK R Less                      2 gal
Powder                          9Box 99lb.
Fountain Solution               20 gal
Press Wash                      35 gal
Gloss Varnish                   50 lb
Dull Varnish                    36 lb
NoWax Gloss Varnich             28 lb
Blankets                                31
Dry Roller Compound             20 lb
D-Glaze                         3 Bottles
EEZy Clean                      3 Bottles
Ink Readi                       11 Cans
On the Fly                      12 Bottles
Aqurous Coating Cleaner         26 Bottles
Salt Crystal Remover            12 Bottles

Chrome Roller Cleaner 3 Bottles
Aqua image Plate Cleaner 7 Bottles
Velocity Plate Cleaner 9 Bottles
Metering Roller Cleaner 2 gal
Royal Flush 4 gal
Fountain Dryer 4 gal

Warehouse Racks 71 Sections
Racks in Machine Bindery 6 Sections
Shelf Racking Pressroom 4 Sections

Ink - Process Colors:
Black 210 lbs
Cyan 270 lbs
Magenta 450 lbs
Yellow 300 lbs

Ink - Pantone Colors:
Trans White 55 lbs
Black 40 lbs
Process Blue 60 lbs
Reflex Blue 60 lbs
Yellow 60 lbs
Warm Red 30 lbs
Rubine Red 60 lbs
Rhod Red 30 lbs
Purple 20 lbs
Green 30 lbs

Metalics:

032
021
072

871 8 lbs
872 38 lbs
873 14 lbs
874 14 lbs
875 7 lbs
876 32 lbs
877 25 lbs
35 lbs
10 lbs
20 lbs

## SCHEDULE B

1.  Imaging Financial Services, Inc. d/b/a EKCC, June 28, 2006

2.  Kodak  Graphic Communications Company, January 9, 2006

3.  NexPress Solutions, Inc., June 5, 2006

4.  Pitney Bowes, August 25, 2009

5.  Eastman Kodak Company, July 4, 2010

6.  ComDoc Equipment Lease Agreement, July 11, 2006

7.  CRC Information Systems, Inc., May 12, 2010

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Order was served via regular U.S. Mail, postage prepaid, upon those listed below, this _____ day of _____, 2010.

_____
Deputy Clerk

Office of the United States Trustee
Howard Metzenbaum Courthouse
201 Superior Ave E Ste 441
Cleveland OH 44114

PAF Investments LLC
3100 Dundee Rd Ste 916
Northbrook IL 60062

Cavanaugh Law LLC
The Hanna Building
1422 Euclid Ave Ste 727
Cleveland OH 44115

Citizens Banking Co.
Attn. James McGookey, Esq.
100 E Water St
Sandusky OH 44870

McDonald Hopkins
Attn: Paul Linehan
600 Superior Ave S Ste 2100
Cleveland OH 44114

Richard Hottenroth, Esq.
126 S Market St
Galion, Ohio 44833

Robert Bordner
8758 Muirfield Dr
Naples FL 34109

First Federal Bank of Ohio
140 N Columbus St
Galion OH 44833

Anthony J. DeGirolamo, Esq.
Courtyard Centre Ste 307
116 Cleveland Ave NW
Canton OH 44702

39997